ARROWOOD, Judge.
 

 *188
 

 *607
 
 Bruce Ray Jones ("defendant") appeals from entry of default and orders denying his motion to set aside entry of default, denying his Rule 59 motion, and ordering specific performance. For the following reasons, we affirm.
 

 I.
 
 Background
 

 Plaintiff initiated this breach of contract action for damages and specific performance by filing a verified complaint on 5 September 2013 alleging defendant failed to comply with a separation agreement and property settlement entered into by the parties on 19 October 2011 as part of their separation and divorce. Defendant filed a motion for extension of time to file responsive pleadings on 13 September 2013 which was granted the same day by order of the clerk. The order allowed responsive pleadings through 8 November 2013. On 7 November 2013, defendant filed a motion to dismiss for lack of subject matter jurisdiction. In the motion, defendant asserted that he had previously filed an action against plaintiff in Lee County with case number 12 CVD 442 to rescind or vacate the 19 October 2011 separation agreement and property settlement at issue and that plaintiff's claims in the present action were compulsory counterclaims in his prior action. Plaintiff filed a response on 13 January 2014.
 

 Defendant's motion to dismiss came on for hearing in Lee County District Court on 12 February 2014. The trial court denied the motion by order filed 18 March 2014. Defendant filed notice of appeal to this Court from the 18 March 2014 order denying his motion to dismiss on 27 March 2014 alleging the trial court's decision affected a substantial right. The appeal was heard before this Court on 25 September 2014. This Court
 
 *608
 
 agreed the matter affected a substantial right and reviewed the appeal, ultimately affirming the trial court's denial of defendant's motion to dismiss in an unpublished opinion filed 17 March 2015.
 
 See
 

 Jones v. Jones
 
 ,
 
 240 N.C. App. 88
 
 ,
 
 772 S.E.2d 13
 
 (2015) (unpub.) COA14-507 (available at
 
 2015 WL 1201332
 
 ,
 
 240 N.C.App. 88
 
 ).
 
 [1]
 
 This Court's opinion was certified to the district court on 6 April 2015 and filed in Lee County on 8 April 2015.
 

 Almost two months later, on 2 June 2015, plaintiff filed a motion for entry of default together with an attached affidavit of plaintiff's counsel. Plaintiff asserted entry of default was proper because defendant failed to file an answer or other pleading before the time for doing so expired. The Lee County Clerk of Court entered default against defendant on the same day plaintiff filed the motion, 2 June 2015. Plaintiff then filed an affidavit and a motion for summary judgment on 15 June 2015.
 

 Almost a month after entry of default, defendant filed a verified motion to dismiss and answer on 30 June 2015. Over a month after entry of default, defendant filed a motion to set aside entry of default on 9 July 2015. Defendant asserted that entry of default should be set aside because "[it] was obtained without notice to [him] and as required by Rule 5" and because "[he] has now filed an answer in this action and has meritorious defenses." Thus, defendant contended "[g]ood cause has been shown to set aside entry of default and it should be set aside pursuant to Rule 55(d)...."
 

 The matter came on for a motions hearing on 6 April 2016. Defendant was represented by new counsel at the hearing because his original counsel was suspended from the practice of law around 5 February 2016. At
 
 *189
 
 the hearing, the court first considered defendant's motion to set aside entry of default. Defendant argued the entry of default was not proper because he did not have notice or receive service. Defendant further argued that even if entry of default was proper without notice or service, the court could set aside entry of default using its equitable powers. In opposition, plaintiff argued the entry of default was simply a ministerial task by the clerk when there is no responsive pleading. Plaintiff additionally argued that notice and service were not necessary for entry of default and, therefore, defendant has not established grounds for setting aside entry of default.
 
 *609
 
 After considering the arguments, the trial court indicated it was inclined to deny defendant's motion to set aside entry of default. At that point, defendant's counsel sought to postpone a decision until they could get an affidavit from defendant's original counsel. Defendant's counsel asserted that the affidavit would show whether or not good cause existed. The trial court agreed to allow defendant to file an affidavit of defendant's original counsel. The next day, 7 April 2016, defendant filed an amended motion to set aside entry of default, which sought to incorporate an affidavit of his original counsel with the original motion to set aside entry of default. The affidavit of defendant's original counsel asserted the following grounds to support his assertion that good cause does exist to set aside the entry of default: the passage of time between filing the motion to dismiss and this Court's decision in defendant's appeal; a State Bar grievance which defendant's original counsel was dealing with; other murder cases defendant's original counsel was involved with; defendant's defense through the litigation; alleged meritorious defenses; the failure of plaintiff's counsel to provide notice of the motion for entry of default; and the violation of local customs when plaintiff's counsel moved for entry of default without discussing the matter with defendant's counsel in advance.
 

 Plaintiff's counsel responded by filing an affidavit on 8 April 2016. Plaintiff's counsel averred that she spoke with defendant's original counsel after this Court's decision and "asked him if [defendant] was now going to pay [plaintiff]. His response to me was 'that it was the case with no options.' " Plaintiff's counsel further averred that they felt filing the motion for entry of default was the best option after defendant's original counsel's "comment ... about this being 'the case with no options' along with his failure to file an answer or to respond with any information regarding [defendant's] willingness or unwillingness to comply with the [a]greement[.]"
 

 After plaintiff submitted a proposed order and defendant filed a request for additional findings of fact, the trial court filed an order denying defendant's motion to set aside entry of default on 10 August 2016. On the same day defendant filed a motion for a new hearing pursuant to Rule 59(a)(8) claiming the trial court erred by imputing his original counsel's neglect to him.
 

 The matter came back on for a hearing on 14 September 2016. At that time, the court considered and denied defendant's Rule 59 motion. The court then proceeded to consider plaintiff's motion for summary judgment and denied the motion. The matter was then scheduled for an evidentiary hearing, which took place on 29 September 2016 and
 
 *610
 
 19 October 2016. After plaintiff submitted a proposed order, defendant filed a request for findings of fact on 9 August 2017.
 

 On 12 October 2017, the trial court filed orders denying defendant's Rule 59 motion, denying plaintiff's summary judgment motion, and ordering specific performance of the separation agreement and property settlement. On 9 November 2017, defendant filed notice of appeal from the trial court's entry of default on 2 June 2015, order denying his motion to set aside entry of default filed on 10 August 2016, and orders filed on 12 October 2017 denying his Rule 59 motion and ordering specific performance.
 

 II.
 
 Discussion
 

 On appeal, defendant challenges the trial court's denial of his motion to set aside entry of default and the trial court's order for specific performance.
 

 1.
 
 Entry of Default
 

 Defendant first argues the trial court erred in denying his motion to set aside
 
 *190
 
 entry of default. "A trial court's decision of whether to set aside an entry of default, will not be disturbed absent an abuse of discretion. A judge is subject to a reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason."
 
 Luke v. Omega Consulting Grp., LLC
 
 ,
 
 194 N.C. App. 745
 
 , 748,
 
 670 S.E.2d 604
 
 , 607 (2009) (citation and quotation marks omitted). Upon review, we find no abuse of discretion and affirm the trial court.
 

 Rule 55(d) governs setting aside entry of default and provides that the trial court may set aside an entry of default "[f]or good cause shown[.]" N.C. Gen. Stat. § 1A-1, Rule 55(d) (2017). "What constitutes good cause depends on the circumstances in a particular case" and "defendant carries the burden of showing good cause to set aside entry of default."
 
 Luke
 
 ,
 
 194 N.C. App. at 748
 
 ,
 
 670 S.E.2d at 607
 
 (quotation marks omitted). When determining if defendant has shown good cause to set aside entry of default, both the trial court and this Court consider the following factors: "(1) was defendant diligent in pursuit of this matter; (2) did plaintiff suffer any harm by virtue of the delay; and (3) would defendant suffer a grave injustice by being unable to defend the action."
 
 Id
 
 .
 

 [I]t is entirely proper for the court to give consideration to the fact that default judgments are not favored in the law. At the same time, however, it is also true that rules which require responsive pleadings within a limited time serve
 
 *611
 
 important social goals, and a party should not be permitted to flout them with impunity.
 

 Howell v. Haliburton
 
 ,
 
 22 N.C. App. 40
 
 , 42,
 
 205 S.E.2d 617
 
 , 619 (1974).
 

 In this case, defendant emphasizes that the standard for setting aside entry of default is lower than that for setting aside a default judgment,
 
 see
 

 Swan Beach Corolla, L.L.C. v. Cnty. of Currituck
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 743
 
 , 747 (2017) (" 'This [good cause] standard is less stringent than the showing of 'mistake, inadvertence, or excusable neglect' necessary to set aside a default judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b).' ") (quoting
 
 Brown v. Lifford
 
 ,
 
 136 N.C. App. 379
 
 , 382,
 
 524 S.E.2d 587
 
 , 589 (2000) ), and
 
 Coastal Federal Credit Union v. Falls
 
 ,
 
 217 N.C. App. 100
 
 , 108,
 
 718 S.E.2d 192
 
 , 197 (2011) (comparing the standard for setting aside entry of default with the more stringent standard for setting aside a default judgment), and contends that he met the threshold of showing good cause to set aside entry of default in this case. Defendant compares his case to
 
 Swan Beach Corolla, L.L.C. v. Cnty. of Currituck
 
 , --- N.C. App. ----,
 
 805 S.E.2d 743
 
 (2017), and
 
 Beard v. Pembaur
 
 ,
 
 68 N.C. App. 52
 
 ,
 
 313 S.E.2d 853
 
 ,
 
 disc. review denied
 
 ,
 
 311 N.C. 750
 
 ,
 
 321 S.E.2d 126
 
 (1984).
 

 In
 
 Swan Beach
 
 , this Court explained that "[a] trial court abuses its discretion when the party appealing the denial of its motion to set aside the entry of default demonstrates that the trial court did not apply the proper 'good cause' standard in its determination." --- N.C. App. at ----,
 
 805 S.E.2d at 747
 
 . This Court further explained that a trial court may also abuse its discretion in finding that a defendant had not established good cause to set aside entry of default.
 
 Id
 
 . at ----,
 
 805 S.E.2d at
 
 747 (citing
 
 Peebles v. Moore
 
 ,
 
 48 N.C. App. 497
 
 , 504,
 
 269 S.E.2d 694
 
 , 698 (1980),
 
 modified and aff'd by
 

 302 N.C. 351
 
 ,
 
 275 S.E.2d 833
 
 (1981) ).
 

 In
 
 Swan Beach
 
 , this Court held "the trial court abused its discretion by failing to apply the good cause standard when it denied [the d]efendant's motion to set aside the entry of default."
 
 Id
 
 . at ----,
 
 805 S.E.2d at 749
 
 . This Court explained that its review of the record revealed "that the trial court identified no reason for its denial of [the d]efendants' motion other than uncertainty as to whether the time for which [the d]efendants had to file an answer had run."
 
 Id
 
 . at ----,
 
 805 S.E.2d at 748
 
 . This Court then went a step further in its analysis and held "that even if the trial court had applied the proper standard it would have abused its discretion in denying [the d]efendant's motion[.]"
 
 Id
 
 . at ----,
 
 805 S.E.2d at 749
 
 . In reaching its alternative holding, this Court analyzed the three factors set forth above and agreed with the defendants that they had been
 
 *612
 
 vigorously pursuing the litigation and that they would suffer a grave injustice given the size of the judgment and the nature of the claims.
 
 *191
 

 Id
 
 . at ----,
 
 805 S.E.2d at 748-49
 
 . In concluding the defendants were vigorously pursuing the litigation, this Court explained that within a week of this Court's decision overturning the trial court's grant of the defendant's prior motion to dismiss, "counsel for [the d]efendants promptly resumed discussions with [the p]laintiffs' counsel regarding discovery scheduling and other tasks related to continuing the litigation" and "[t]wo days before [the p]laintiffs' counsel sought entry of default, counsel had scheduled a meeting to discuss settlement."
 
 Id
 
 . at ----,
 
 805 S.E.2d at 749
 
 . This Court further noted that the entry of default was a surprise to the defendants, who submitted a proposed answer and filed a motion to set aside entry of default six days after entry of default.
 
 Id
 
 . at ----,
 
 805 S.E.2d at 749
 
 .
 

 In
 
 Beard
 
 , to which this Court referred in
 
 Swan Beach
 
 ,
 
 see
 
 --- N.C. App. at ----,
 
 805 S.E.2d at 748
 
 , this Court reviewed the trial court's denial of the plaintiff's motion to set aside entry of default on the defendant's counterclaim and held the trial court abused its discretion.
 
 Beard
 
 ,
 
 68 N.C. App. at 55-56
 
 ,
 
 313 S.E.2d at 855-56
 
 . This Court explained in
 
 Beard
 
 that the plaintiff cited both Rule 55 and Rule 60 and specifically referred to "excusable neglect" and "meritorious defense" in the motion to set aside the entry of default and it was unclear from the trial court's order whether the trial court applied the proper "good cause" standard.
 
 Id
 
 . at 56,
 
 313 S.E.2d at 855
 
 . This Court, however, held that "[e]ven if the trial court used as its standard, 'good cause,' as set forth in Rule 55(d), the trial court abused its discretion" because the record indicated that "discovery was being pursued vigorously by the parties; that [the] plaintiff's counsel thought, albeit erroneously, that service was not perfected on [the] defendant until ... four days before the entry of default; and that all matters in [the] defendant's [c]ounterclaim related to the ... subject of all material allegations in the plaintiff's [c]omplaint."
 
 Id
 
 . at 56,
 
 313 S.E.2d at 855-56
 
 .
 

 First and foremost, unlike in
 
 Swan Beach
 
 and
 
 Beard
 
 , it is clear the trial court applied the "good cause" standard in this case. The trial court made a finding and issued a conclusion directly stating that "[d]efendant has failed to show good cause for his failure to file a responsive pleading in this matter."
 

 Furthermore, the trial court did not abuse its discretion in its good cause analysis. As this Court noted in both
 
 Swan Beach
 
 and
 
 Beard
 
 , the unique facts in each case must be considered. While we may have arrived at a result different from that of the trial court if we were to review the
 
 *613
 
 matter
 
 de novo
 
 , we simply cannot say that the trial court abused its discretion in this instance.
 

 This Court's analysis in both
 
 Swan Beach
 
 and
 
 Beard
 
 emphasized that the defaulting party was vigorously pursuing the litigation at the time of the entry of default. That does not appear to be the case following the appeal to this Court in the present action. Defendant attempts to broaden the scope of this Court's review on appeal by asserting that "[i]t cannot be said that [he] was anything other than diligent in pursuing issues relating to the subject agreement...." In doing so, defendant conflates this action with the action he previously filed to rescind and vacate the separation agreement and property settlement and contends he vigorously litigated both actions all the way to this Court. Defendant contends his participation in the two actions has included taking part in depositions and court hearings, submitting affidavits, and conducting other discovery. Furthermore, despite defendant's acknowledgment that his answer was untimely by weeks, defendant emphasizes that he has submitted an answer raising defenses along with another motion to dismiss.
 

 Indeed, in the order denying defendant's motion to set aside entry of default, the trial court found that defendant had vigorously litigated this action and asserted meritorious defenses. Yet, contrary to defendant's assertion that he was actively pursuing his case through the time of the entry of default and unlike in
 
 Swan Beach
 
 , in which the parties immediately resumed discussions regarding discovery and litigation following this Court's decision on appeal, nothing in the record in this case indicates defendant took any action related to this particular case following the filing of this Court's decision on 17 March
 
 *192
 
 2015 and the certification of that opinion to the district court on 6 April 2015. Based on the record in this case, the trial court found counsel for the parties continued to communicate between the time this Court's decision was filed on 17 March 2015 and entry of default on 2 June 2015. Those communications, however, were directed toward discovery, trial preparation, and continuances in a separate action by plaintiff against defendant's current wife for alienation of affection; they have nothing to do with the present case. The only evidence of communications between counsel concerning this particular case was the affidavit of plaintiff's counsel, in which counsel explains she communicated with defendant's counsel, who indicated there were no options after this Court's decision on appeal.
 

 Additionally, we note that after this Court upheld the validity of the separation agreement and property settlement in defendant's appeal in his separate action to rescind and vacate the agreement,
 
 see
 

 *614
 

 Jones v. Jones
 
 ,
 
 240 N.C. App. 88
 
 ,
 
 772 S.E.2d 13
 
 (2015) (unpub.) COA14-236 (available at
 
 2015 WL 1201320
 
 ,
 
 240 N.C.App. 88
 
 ), the only issues for determination in this action were whether defendant breached the agreement and what plaintiff was entitled to recover as a result of any breach. Defendant has admitted to his unilateral reduction in payments toward obligations under the separation agreement and property settlement. Furthermore, the trial court denied plaintiff's motion for summary judgment and ultimately considered evidence related to the affirmative defenses asserted in the untimely answer submitted by defendant. Defendant had the opportunity at trial to contest plaintiff's evidence of his ability to comply and the amount of damages. Thus, it does not appear that defendant has suffered a grave injustice as a result of the entry of default.
 

 Given that defendant took no action regarding this case between the filing of this Court's decision on his appeal and the entry of default, and because defendant admits to not fully complying with the terms of the separation agreement and property settlement when coupled with the fact that defendant was able to contest plaintiff's evidence at trial, this case is distinguishable from
 
 Swan Beach
 
 and
 
 Beard
 
 . The trial court did not abuse its discretion in this case.
 

 Moreover, the trial court found that "[d]efendant failed to state a reason in his [m]otion for his inattention to the process." Defendant argues this finding is not supported by the evidence. However, the record shows that the only grounds asserted in the motion to set aside filed on 9 July 2015 were that defendant previously appeared in the action, the motion for entry of default and the entry of default do not bear a certificate of service, entry of default was obtained without notice, and defendant had filed an answer after entry of default. The motion did not explain why defendant did not timely answer the complaint.
 

 It was not until defendant's motion came on for hearing and the trial court indicated the motion would be denied that defendant requested, and the trial court allowed defendant's replacement counsel to file an affidavit of defendant's original counsel. The trial court, however, did not allow defendant to file an amended motion to change the basis asserted in the original motion. While the affidavit submitted shows that defendant's original counsel was dealing with several unrelated matters during the relevant time, the affidavit continues to maintain that it was defendant's original counsel's opinion that plaintiff's counsel should have provided notice of their motion for entry of default. Defendant's original counsel also candidly admits in the affidavit that it "slipped [his] mind that [he] needed to file additional responsive pleadings after th[is Court] entered its decision."
 

 *615
 
 Considering both the motion to set aside entry of default filed on 9 July 2015 and the affidavit, we hold the trial court's finding is supported by the record. The trial court did not abuse its discretion in denying defendant's motion to set aside entry of default in this case.
 

 2.
 
 Specific Performance
 

 Defendant also argues the trial court erred in various ways in its order for specific performance. We are not convinced.
 

 *193
 
 This Court has explained that, "the equitable remedy of specific performance may be ordered only if no adequate remedy exists at law, and the party who is ordered to specifically perform is capable of doing so."
 
 Lasecki v. Lasecki
 
 , --- N.C. App. ----, ----,
 
 809 S.E.2d 296
 
 , 302 (2017) (citations omitted).
 

 The sole function of the equitable remedy of specific performance is to compel a party to do that which in good conscience he ought to do without court compulsion. The remedy rests in the sound discretion of the trial court, and is conclusive on appeal absent a showing of a palpable abuse of discretion.
 

 Munchak Corp. v. Caldwell
 
 ,
 
 46 N.C. App. 414
 
 , 418,
 
 265 S.E.2d 654
 
 , 657 (1980) (citations omitted),
 
 modified on other grounds
 
 ,
 
 301 N.C. 689
 
 ,
 
 273 S.E.2d 281
 
 (1981).
 

 Defendant first takes issue with the portion of the trial court's order for specific performance requiring him to continue paying plaintiff the sum of $3,750.00 per month in alimony until the time that the mortgage on the former marital residence was scheduled to be paid in full. Defendant contends this portion of the order was in error because plaintiff voluntarily satisfied the mortgage on the former marital residence on 27 November 2012, which defendant contends triggered a reduction in his alimony payments. Defendant also takes issue with that portion of the trial court's order for specific performance ordering him to pay $16,080.66 to plaintiff after plaintiff satisfied an outstanding balance on an equity line of credit with BB & T that was defendant's responsibility under the separation agreement and property settlement. Defendant argues these alleged errors were the result of the trial court adopting plaintiff's position that there was a subsequent oral agreement between the parties concerning the refinance of the mortgage on the former marital residence.
 

 We address these issues together and, upon review, hold the trial court did not abuse its discretion in fashioning an equitable remedy in
 
 *616
 
 this instance to achieve the original intent of the parties and ordering specific performance.
 

 In regards to the responsibilities of the parties for the mortgage and the equity line of credit, the separation agreement entered into by the parties includes the following relevant provisions:
 

 6. ... [Defendant] shall assume sole liability for the outstanding second mortgage to BB & T, pay in full within 48 months from the date of this agreement, and hold [plaintiff] harmless therefrom.
 

 13. ... The [c]amper currently owned by the parties is hereby transferred, set over, and assigned to [defendant] as his sole and separate property. The [c]amper was purchased through the BB & T Home Equity Line of Credit for which [defendant] assumes sole liability. [Defendant] shall make regular payments on this [l]ine of [c]redit and make no further withdrawals. He shall pay this [l]ine of [c]redit in full within 48 months of this agreement.
 

 18. ... [Defendant] agrees to pay to [plaintiff] as [a]limony the sum of $3,750.00 per month on the first day of each month beginning [1 November 2011] and on the first day of each month thereafter.... At such time as the former marital residence mortgage is paid in full, [defendant's] alimony obligation shall be reduced by $1,444.00, the amount of the mortgage payment. The payments for alimony to [plaintiff], as provided herein, are fixed payments, and shall not be modified or changed, except by further written agreement of the parties.
 

 In plaintiff's 5 September 2013 complaint, plaintiff asserted the following allegations that defendant breached his obligations under the separation agreement and property settlement:
 

 7. That [d]efendant has breached the parties' agreement in that he has failed to pay the monthly alimony of $3,750.00 in full since [7 December 2012].
 

 8. Despite [p]laintiff's demands, the [d]efendant has continued to unilaterally reduce his alimony payments since [7 December 2012.] Defendant owes [p]laintiff
 
 *617
 
 alimony in the amount of
 
 *194
 
 $6,678.13 as arrearages as of [16 August 2013].
 

 9. That there was an outstanding balance of $26,020.97 on the [e]quity [l]ine of [c]redit with BB & T on [the] date of separation. Defendant had purchased a camper for his use on [9 September 2011] with an initial cost of $16,020.97. Defendant made minimal monthly payments on the [e]quity [l]ine of [c]redit until [27 November 2012]. On [25 September 2012], [d]efendant represented to [p]laintiff that he would pay off the portion of the outstanding second mortgage to BB & T which consisted of the funds used to purchase his [c]amper with the initial cost of $16,020.97 on [9 September 2011]. Plaintiff relied to her detriment on [d]efendant's representation and obtained financing to combine the first and second mortgages to decrease the monthly payment on or about [27 November 2012]; however, [d]efendant then refused to pay to [p]laintiff the outstanding balance for the [c]amper unless she agreed to his demand to renegotiate the alimony provisions of the subject [s]eparation [a]greement and [p]roperty [s]ettlement. Defendant was distributed the camper in the parties [s]eparation [a]greement and [p]roperty [s]ettlement; however, [p]laintiff now is solely obligated to BB & T for the total previous equity line balance. Plaintiff has made 9 payments since the refinance of the two mortgages. It is equitable that [d]efendant should reimburse [p]laintiff for the entire $26,020.97 date of separation equity line balance.
 

 Both parties acknowledge that the evidence showed that plaintiff satisfied the mortgage on the former marital residence on 27 November 2012 when she refinanced the mortgage in order to reduce the monthly payment. In connection with the refinance, plaintiff paid the outstanding balance on the equity line of credit with BB & T and refinanced it together with the mortgage on the former marital residence. Up to that point, defendant had made minimum payments on the equity line of credit to keep from defaulting. Defendant, however, argues that no competent evidence was presented regarding conversations between him and plaintiff about the refinance of the debt. Defendant objected when plaintiff testified defendant had requested the refinance and plaintiff admitted that
 
 *618
 
 she did not directly communicate with defendant. At that time, plaintiff indicated the conversation was through counsel.
 

 In any event, without making findings about any subsequent conversation or oral agreement between the parties, the trial court found as follows:
 

 12. That the [d]efendant began to unilaterally reduce his alimony payments on [7 December 2012] and has continued to do so. Defendant owed [p]laintiff alimony in the amount of $6,678.13 as arrearages as of [16 August 2013] and $81,678.13 as of October 2016....
 

 13. That [d]efendant has breached the parties' agreement in that he has failed to pay the monthly alimony of $3,750.00 in full since [7 December 2012].
 

 ....
 

 17. That there was an outstanding balance of $26,020.97 on the [e]quity [l]ine of [c]redit with BB & T on [the] date of separation. Defendant had purchased a camper for his use on [9 September 2011] with an initial cost of $16,020.97 which was paid out of funds from the BB & T [h]ome [e]quity [l]ine of [c]redit. Defendant received the [c]amper pursuant to the [a]greement, and was to make regular payments on this [l]ine of [c]redit, make no further withdrawals, and pay the [l]ine of [c]redit in full within 48 months of the [a]greement. Defendant made minimal monthly payments on the [e]quity [l]ine of [c]redit until [27 November 2012]. Plaintiff refinanced the [m]ortgage and [e]quity [l]ine of [c]redit in order to reduce her monthly payment. Although said refinance extinguished the outstanding equity line, [d]efendant has not paid the balance of [e]quity [l]ine of [c]redit that
 
 *195
 
 he promised to pay under the [a]greement.
 

 ....
 

 41. That the [p]laintiff is entitled to judgment against the [d]efendant in the amount of $6,678.13 for past due and unpaid alimony.
 

 42. That it is equitable for the [p]laintiff to receive a judgment requiring the [d]efendant to pay to [p]laintiff
 
 *619
 
 the amount of $16,080.66 representing the date of separation payoff amount of the [e]quity [l]ine of [c]redit with BB & T within 12 months of the date of this [o]rder.
 

 43. In addition to the specific performance provision of the parties' [s]eparation [a]greement and [p]roperty [s]ettlement, the [p]laintiff's remedies at law are inadequate to enforce the agreement in that performance of the agreement involves future payments and activities which cannot adequately be addressed by way of judgment against the [d]efendant. Defendant should be required to specifically perform his obligation to pay alimony pursuant to this agreement, ... as well as his payments for the BB & T second mortgage on the former marital residence.
 

 Based on these findings, the trial court concluded that "[p]laintiff is entitled to an order of specific performance of [d]efendant's support obligation as provided in the parties' [a]greement" and ordered, in pertinent part, as follows:
 

 1. That [p]laintiff is granted specific performance of the [d]efendant's obligations as provided in the parties' [s]eparation [a]greement and [p]roperty [s]ettlement dated [19 October 2011].
 

 2. That [d]efendant shall pay to [p]laintiff alimony that was due in the amount of $6,678.13 as arrearage as of [16 August 2013] plus monies for failure to perform since [16 August 2013].
 

 3. That [d]efendant shall pay [p]laintiff the sum of $3,750.00 per month as alimony on the first day of each month and shall continue to pay [p]laintiff alimony as provided in the [s]eparation [a]greement and [p]roperty [s]ettlement paragraph 18. At such time that the date that the former marital residence mortgage was scheduled to be paid in full, prior to [p]laintiff refinancing, [d]efendant's alimony obligation shall be reduced by $1,444.00 per month.
 

 4. That [d]efendant is ordered and required to pay to [plaintiff] the [e]quity [l]ine balance in the amount of $16,080.66 within twelve (12) months from the entry of this [o]rder.
 

 *620
 
 Defendant's argument on appeal is that the trial court improperly reformed the separation agreement and property settlement so that he is required to pay what was contemplated at the time the separation agreement and property settlement was executed, even after plaintiff satisfied the mortgage and equity line of credit that he was obligated to pay. Defendant contends the trial court erred because it must uphold the plain language of the original agreement. We do not agree the trial court erred.
 

 Our Supreme Court has long recognized that "[t]he heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time."
 
 Gould Morris Elec. Co. v. Atlantic Fire Ins. Co.
 
 ,
 
 229 N.C. 518
 
 , 520,
 
 50 S.E.2d 295
 
 , 297 (1948). That is no different when the contract is a separation agreement.
 

 "Questions relating to the construction and effect of separation agreements between a husband and wife are ordinarily determined by the same rules which govern the interpretation of contracts generally. Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution."
 

 Gilmore v. Garner
 
 ,
 
 157 N.C. App. 664
 
 , 666,
 
 580 S.E.2d 15
 
 , 17-18 (2003) (quoting
 
 Lane v. Scarborough
 
 ,
 
 284 N.C. 407
 
 , 409-10,
 
 200 S.E.2d 622
 
 , 624 (1973) ).
 

 *196
 
 As stated above, the terms of the separation agreement and property settlement concerning the mortgage and equity line of credit are as follows:
 

 6. ... [Defendant] shall assume sole liability for the outstanding second mortgage to BB & T, pay in full within 48 months from the date of this agreement, and hold [plaintiff] harmless therefrom.
 

 13. ... The [c]amper currently owned by the parties is hereby transferred, set over, and assigned to [defendant] as his sole and separate property. The [c]amper was purchased through the BB & T Home Equity Line of Credit for which [defendant] assumes sole liability. [Defendant] shall make regular payments on this [l]ine of [c]redit and make no further withdrawals. He shall pay this [l]ine of [c]redit in full within 48 months of this agreement.
 

 *621
 
 18. ... [Defendant] agrees to pay to [plaintiff] as [a]limony the sum of $3,750.00 per month on the first day of each month beginning [1 November 2011] and on the first day of each month thereafter.... At such time as the former marital residence mortgage is paid in full, [defendant's] alimony obligation shall be reduced by $1,444.00, the amount of the mortgage payment. The payments for alimony to [plaintiff], as provided herein, are fixed payments, and shall not be modified or changed, except by further written agreement of the parties.
 

 There is nothing in the record to suggest that the parties contemplated a refinance of the mortgage and equity line of credit would terminate defendant's obligations to pay the debts. It appears that the intent of the parties was that defendant would pay $3,750.00 in alimony per month until the mortgage on the marital property at the time of the separation agreement and property settlement was executed was "paid in full," not merely satisfied in a refinance with the debt rolling over into a new mortgage. To hold otherwise would shift from defendant to plaintiff the original mortgage obligation. In the same way, it appears that the intent of the parties was that defendant would pay the entirety of the outstanding balance on the equity line of credit. Defendant testified that at the time of the agreement, it was his intention to pay $3,750.00 in alimony per month and to pay off the equity line of credit. The subsequent refinance of the mortgage and equity line of credit could not have changed the intention of the parties at the time they entered into the separation agreement and property settlement. The separation agreement and property settlement does not specifically address the situation presented here. However, it is clear from the plain language of the agreement and defendant's own testimony that it was the intent of the parties that defendant was to be responsible for paying the balance of both the equity line directly and the mortgage via paying an additional $1,444.00 per month in alimony until the mortgage was paid in full.
 

 In the order for specific performance, the trial court requires defendant to pay no more and no less towards the mortgage on the former marital residence than the parties intended when they entered into the separation agreement and property settlement. Specifically, defendant is obligated to pay "$3,750.00 per month as alimony" in accordance with the separation agreement and property settlement until "
 
 the date that the former marital residence mortgage was scheduled to be paid in full, prior to [p]laintiff refinancing[; then d]efendant's alimony obligation
 

 *622
 

 shall be reduced by $1,444.00 per month
 
 ." (Emphasis added). With the reduced, but extended mortgage payments on the former marital residence following the refinance, plaintiff may receive more in alimony in the short term than is necessary to make the mortgage payments on the former marital residence. However, that is by no means a financial benefit to plaintiff who will be making mortgage payments long after defendant's alimony payments have been reduced by $1,444.00 to exclude any contribution to the mortgage. As indicated above, because the order for specific performance requires defendant to pay $3,750.00 in alimony until the time the former marital residence mortgage was scheduled to be paid in full, defendant's obligation is limited to what
 
 *197
 
 was contemplated at the time the separation agreement and property settlement was entered into by the parties. Likewise, the order for specific performance does not require defendant to pay any more towards the equity line of credit than he was obligated to pay under the separation agreement and property settlement. Specifically, the trial court ordered defendant to "pay to [plaintiff] the [e]quity [l]ine balance in the amount of $16,080.66 within twelve (12) months from the entry of [the o]rder]."
 

 Upon review of the record in his case, we hold the trial court did not abuse its discretion in ordering specific performance to achieve the intent of the parties. The order for specific performance is equitable as it achieves the parties' intent, as shown by a full reading of the separation agreement and property settlement and by defendant's own testimony. To hold otherwise would provide a windfall to defendant who would escape his obligation to satisfy the former marital residence mortgage in the form of alimony until the former marital residence mortgage is paid in full.
 

 Lastly, defendant contends the trial court erred in ordering specific performance because he lacked the means and ability to comply with the agreement.
 

 Plaintiff bears the burden of showing the defendant has the ability to comply with an order for specific performance.
 
 See
 

 Reeder v. Carter
 
 ,
 
 226 N.C. App. 270
 
 , 276,
 
 740 S.E.2d 913
 
 , 918 (2013). Moreover, the trial court must issue findings concerning the defendant's ability to pay before it orders specific performance.
 
 Edwards v. Edwards
 
 ,
 
 102 N.C. App. 706
 
 , 709,
 
 403 S.E.2d 530
 
 , 531 (1991) (citing
 
 Cavenaugh v. Cavenaugh
 
 ,
 
 317 N.C. 652
 
 , 657,
 
 347 S.E.2d 19
 
 , 23 (1986) ). Yet,
 

 [i]n finding that the defendant is able to perform a separation agreement, the trial court is not required to make a specific finding of the defendant's present ability to
 
 *623
 
 comply as that phrase is used in the context of civil contempt. In other words, the trial court is not required to find that the defendant possess[es] some amount of cash, or asset readily converted to cash prior to ordering specific performance.
 

 Condellone v. Condellone
 
 ,
 
 129 N.C. App. 675
 
 , 683,
 
 501 S.E.2d 690
 
 , 696 (1998) (quotation marks and citations omitted).
 

 In addition to the payments discussed above for alimony in arrears, alimony yet to be paid, and for compensation for the repayment of the equity line of credit, the trial court ordered defendant to "immediately designate [p]laintiff as beneficiary of [a] life insurance policy on his life with a face value of at least $300,000.00" and to "maintain the 12.743 acres [that comprises the former marital residence]." The trial court specifically found in finding of fact number 37 and concluded in conclusion of law number 3 that "[d]efendant has had and continues to have the means and ability to comply with the terms of the [separation agreement and property settlement]."
 

 Defendant now contends there is insufficient evidence in the record to support the trial court's finding and conclusion that he has the ability to comply. Defendant also takes issue with the trial court allowing plaintiff to testify concerning her cost of living and financial future. Defendant contends plaintiff's testimony was irrelevant, speculative, and merely plaintiff's opinion.
 

 Upon review, we hold there was sufficient evidence to support the trial court's many unchallenged findings regarding defendant's financial situation and ability to comply. Specifically, the trial court made findings that defendant lives with his current wife on three acres of land in a mobile home; his current wife has stopped working at the age of 54; defendant and his current wife have made improvements to the mobile home so that her mother is able to live with them instead of in a nursing home; defendant has voluntarily assumed the support for two additional people since executing the separation agreement and property settlement; defendant's current wife receives a distribution of $1,500.00 per month from her 401-k plan; defendant has monthly expenses totaling $3,000.00 for three people without including alimony; defendant has incurred $15,000.00 in legal fees in actions against plaintiff; beginning in June 2013, defendant increased his vehicle payment from $350.00 per month to
 
 *198
 
 $500 per month for four months and then increased his vehicle payment again to $1,000.00 per month for six months until he paid $2,078.15 to pay the loan off in April 2014; defendant's current wife
 
 *624
 
 obtained a new vehicle with a $646.54 per month payment; defendant and his current wife purchased six spaces in trailer park that they rent for $350.00 per month, totaling $2,100.00 per month in income; defendant has continued to contribute to his retirement at Duke Energy in 2016 making contributions of $10,556.18 and receiving employer contributions of $4,524.06; defendant maintains a life insurance policy with his current wife named as the beneficiary; as of 11 September 2016, defendant's gross earnings for the year from Duke Energy were $75,401.32; defendant received federal and state income tax returns for 2012 totaling $13,668.00; defendant and his current wife have received federal and state income tax returns for their joint filings for 2013 through 2015 totaling $46,233.00; defendant has a balance of $163,969.00 in one retirement account, $179,013.00 in another individual retirement account, and $257,656.00 in a 401-k plan; defendant has not withdrawn any money from his retirement accounts or 401-k plan; defendant's BB & T joint savings account contained over $100,000.00 from December 2013 until August 2015 when his new wife withdrew $80,000.00 by online transfer.
 

 We hold these numerous findings support the trial court's ultimate finding and conclusion that "[d]efendant has had and continues to have the means and ability to comply with the terms of the [separation agreement and property settlement]." The record in this case established a valid agreement, a breach of that agreement, and defendant's ability to comply with the order for specific performance. Consequently, any error in allowing plaintiff's testimony regarding her own finances into evidence was harmless. The trial court did not abuse its discretion in ordering specific performance in this case.
 

 III.
 
 Conclusion
 

 For the reasons discussed, we affirm both the trial court's denial of defendant's motion to set aside entry of default and the trial court's order for specific performance.
 

 AFFIRMED.
 

 Judge INMAN concurs.
 

 Judge TYSON concurs in part, concurs in result in part, and dissents per separate opinion.
 

 TYSON, Judge, concurring in part, concurring in the result in part, dissenting in part.
 

 *625
 
 I concur with that portion of the majority's opinion which affirms under an abuse of discretion standard of review the trial court's denial of defendant-husband's motion to set aside entry of default pursuant to North Carolina Rule of Civil Procedure 55(d). I also concur in result only to affirm that portion of the trial court's order requiring defendant to specifically pay the balance of the equity line of credit. Defendant agreed to assume that liability under the parties' separation agreement and he received the camper the equity line of credit was used to purchase. The trial court's order for defendant to compensate plaintiff for the equity line puts him in no different a position than he otherwise would have been, and is in accordance with what the parties' agreed to under the plain terms of the separation agreement.
 

 I respectfully dissent from that portion of the majority's opinion which affirms the trial court's order of specific performance requiring defendant to pay arrearages on and prospective alimony in the amount of $3,750.00 per month. This order is based upon the trial court's re-writing the parties' express agreement and erroneous conclusion that the parties intended defendant's alimony obligation would be reduced by $1,444.00 per month "[a]t such time as the date that the former marital residence mortgage
 
 was scheduled to be paid in full
 
 , prior to plaintiff refinancing[.]" (Emphasis supplied).
 

 The trial court's conclusion and the majority opinion's holding are contrary to the express and plain language agreed to by the parties in the separation agreement. This agreement provides a condition precedent for defendant's alimony obligation to be reduced by $1,440.00 per month "[a]t such time as the
 
 *199
 
 former marital residence mortgage
 
 is paid in full
 
 [.]" (Emphasis supplied).
 
 See, e.g.,
 

 In re Foreclosure of Goforth Properties, Inc.,
 

 334 N.C. 369
 
 , 375,
 
 432 S.E.2d 855
 
 , 859 (1993) ("A condition precedent is an event which must occur before a contractual right arises[.]" (citation omitted) ). The trial court misconstrued the mortgage pay-off condition precedent to reduce defendant's monthly alimony, ventured outside the four corners of the agreement, and failed to make any findings of fact of whether the mortgage on the former marital residence was "paid in full" upon the refinance.
 

 I.
 
 Standard of Review
 

 The Supreme Court of North Carolina has held that separation agreements are privately agreed-upon contracts and are to be interpreted according to principles of contract law.
 
 Lane v. Scarborough
 
 ,
 
 284 N.C. 407
 
 , 409,
 
 200 S.E.2d 622
 
 , 624 (1973). "The proper interpretation of a contractual provision presents a question of law, which is reviewed
 
 de
 

 *626
 

 novo
 
 by this Court."
 
 Reaves v. Hayes
 
 ,
 
 174 N.C. App. 341
 
 , 345,
 
 620 S.E.2d 726
 
 , 729 (2005) (citation omitted).
 

 Our Supreme Court has also held: "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law."
 
 Bicycle Transit Authority v. Bell,
 

 314 N.C. 219
 
 , 227,
 
 333 S.E.2d 299
 
 , 304 (1985) (citations omitted). "[W]here the terms of a separation agreement are plain and explicit, the court will determine the legal effect and
 
 enforce it as written by the parties
 
 ."
 
 Tyndall-Taylor v. Tyndall
 
 ,
 
 157 N.C. App. 689
 
 , 692,
 
 580 S.E.2d 58
 
 , 61 (2003) (emphasis supplied) (citation and internal quotation marks omitted). "[C]ourts follow the general rule that the parties are free to contract according to their own judgment and the reasonableness of their engagements will not be entered into."
 
 Gas House, Inc. v. Southern Bell Telephone Co.
 
 ,
 
 289 N.C. 175
 
 , 183,
 
 221 S.E.2d 499
 
 , 505 (1976),
 
 overruled in part on other grounds by
 

 State ex rel. Utilities Comm. v. Southern Bell
 
 ,
 
 307 N.C. 541
 
 ,
 
 299 S.E.2d 763
 
 (1983).
 

 When applying the terms and conditions of a contract, our Supreme Court has held: "It is a well-settled principle of legal construction that it must be presumed the parties intended what the language used clearly expresses, and the contract
 
 must be construed to mean what on its face it purports to mean
 
 ."
 
 Hagler v. Hagler,
 

 319 N.C. 287
 
 , 294,
 
 354 S.E.2d 228
 
 , 234 (1987) (emphasis supplied and citation omitted). The intent of the parties is determined by reviewing the plain written language of the contract.
 
 Bueltel v. Lumber Mut. Ins. Co.
 
 ,
 
 134 N.C. App. 626
 
 , 631,
 
 518 S.E.2d 205
 
 , 209 (1999).
 

 "Whether or not the language of a contract is ambiguous or unambiguous is a question for the court to determine."
 
 Piedmont Bank and Trust Co. v. Stevenson,
 

 79 N.C. App. 236
 
 , 240,
 
 339 S.E.2d 49
 
 , 52 (1986).
 

 "Where the parties have put their agreement in writing, it is presumed that the writing embodies their entire agreement."
 
 Dellinger v. Lamb
 
 ,
 
 79 N.C. App. 404
 
 , 408,
 
 339 S.E.2d 480
 
 , 482 (1986). The parol evidence rule provides "that, in the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new or different contract from the one evidenced by the writing, is incompetent."
 
 Phelps v. Spivey
 
 ,
 
 126 N.C. App. 693
 
 , 697,
 
 486 S.E.2d 226
 
 , 229 (1997) (emphasis and citation omitted).
 

 "[A] contract is to be interpreted as written, as if there is no dispute with respect to the terms of the contract and they are plain and
 
 *627
 
 unambiguous,
 
 there is no room for construction
 
 ."
 
 Lowe's v. Hunt
 
 ,
 
 30 N.C. App. 84
 
 , 86,
 
 226 S.E.2d 232
 
 , 234 (1976) (emphasis supplied) (quotation marks and citation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument."
 
 Light Co. v. Bowman
 
 ,
 
 229 N.C. 682
 
 , 693-94,
 
 51 S.E.2d 191
 
 , 199 (1949) (citations omitted).
 

 In
 
 Neal v. Marrone
 
 , our Supreme Court stated:
 

 [W]here the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty,
 
 *200
 
 it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed merged into the written agreement.
 

 239 N.C. 73
 
 , 77,
 
 79 S.E.2d 239
 
 , 242 (1953). Another court applying these well-settled principles of contract law stated: "Absent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish,
 
 no matter how unwise it may appear to a third party
 
 ."
 
 Rowe v. Great Atlantic & Pac. Tea Co.
 
 ,
 
 46 N.Y.2d 62
 
 ,
 
 412 N.Y.S.2d 827
 
 ,
 
 385 N.E.2d 566
 
 , 569 (1978) (emphasis supplied).
 

 "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court ... and
 
 the court cannot look beyond the terms of the contract to determine the intentions of the parties.
 
 "
 
 Piedmont Bank
 
 , 79 N.C. App. at 240, 339 S.E.2d at 52 (emphasis supplied).
 

 II.
 
 Plain Language of Separation Agreement
 

 The relevant provisions of the parties' separation agreement state:
 

 18.
 
 Alimony and Post-Separation Support
 
 . Husband agrees to pay to Wife as Alimony the sum of $3,750.00 per month on the first day of each month beginning November 1, 2011 and on the first day of each month thereafter....
 
 At such time as the former marital residence mortgage is paid in full, Husband's alimony obligation shall be reduced by $1,440.00, the amount of the mortgage payment
 
 . The payments for alimony to Wife, as provided herein, are fixed payments, and shall not be modified or changed, except by further written agreement of the parties. (Emphasis supplied)
 

 *628
 
 ...
 

 26.
 
 Entire Agreement
 
 . Each party acknowledges that the agreement contains
 
 the entire understanding and that there are no representations, warranties, covenants, nor undertakings other than those expressly set forth in the agreement
 
 . (Emphasis supplied)
 

 ....
 

 32.
 
 Whole Contract; Modification or Waiver
 
 . This agreement constitutes the whole contract between the parties hereto. A modification or waiver of any provision of this agreement shall be effective only if made in writing and executed upon the same formality as the original agreement....
 

 The emphasized portion of provision 18 ("the mortgage condition") is plain, explicit, and unambiguous.
 
 See
 

 Tyndall-Taylor,
 

 157 N.C. App. at 692
 
 , 580 S.E.2d at 61 ;
 
 Piedmont Bank
 
 , 79 N.C. App. at 240, 339 S.E.2d at 52. On its face, the mortgage condition plainly states the parties' intent and agreement that when the mortgage on the former marital residence is "paid in full," defendant's alimony obligation to plaintiff would be reduced by $1,440.00 per month. The mortgage condition does not indicate the parties contemplated a particular date or time upon which the mortgage was scheduled to be "paid in full." Defendant's alimony would be reduced only "
 
 [a]t such time
 
 as the former marital residence mortgage is paid in full." (Emphasis supplied).
 

 Provisions 26 and 32 indicate the separation agreement constitutes the whole contract and the complete agreement between the parties. "There are situations in which the writing, on its face, will clearly indicate that it reflects a complete contract which ... may not be contradicted or varied." John N. Hutson, Jr. & Scott A. Miskimon,
 
 North Carolina Contract Law
 
 , § 5-2, 423 Lexis Publishing, (1st Ed. 2001).
 

 The mortgage condition is a condition precedent to the reduction of defendant's alimony obligation.
 
 See
 

 Goforth,
 

 334 N.C. at 375
 
 ,
 
 432 S.E.2d at 859
 
 (" 'Almost any event may be made a condition.' The event may be largely within the control of the obligor or the oblige." (quoting II E. Allan Farnsworth,
 
 Farnsworth on Contracts
 
 § 8.2 (1990) ) ). "Where parties enter a contract containing a condition precedent, they are bound when the condition is satisfied."
 
 Powell v. City of Newton
 
 ,
 
 364 N.C. 562
 
 , 566,
 
 703 S.E.2d 723
 
 , 727 (2010).
 

 *201
 

 *629
 
 The trial court, and the majority's opinion, erroneously ignored the plain language of this condition precedent and interpreted "[a]t such time" as being "the date that the former marital residence mortgage
 
 was scheduled to be paid in full
 
 ," a new substituted provision for the parties' express language. (Emphasis supplied).
 

 The majority's opinion states: "It appears that the intent of the parties was that defendant would pay $3,750.00 in alimony per month until the mortgage on the marital property at the time of the separation agreement and property settlement was executed was 'paid in full,' not merely satisfied in a refinance with the debt rolling over into a new mortgage." The majority's opinion does not hold the mortgage condition was ambiguous, but effectively concludes it was proper for the trial court to venture outside the four corners of the separation agreement to consider defendant's testimony and construe the intent of the parties beyond the plain language stated in the mortgage condition.
 
 See
 

 Lowe's
 
 ,
 
 30 N.C. App. at 86
 
 ,
 
 226 S.E.2d at 234
 
 ("if there is no dispute with respect to the terms of the contract and they are plain and unambiguous there is no room for construction").
 

 The majority's opinion erroneously: (1) ignores the plain, unambiguous language of the mortgage condition in the separation agreement; (2) infers and injects its notion of the parties' intent; (3) adds a time period and condition that does not exist; (4) wholly ignores provisions 26 and 32 of the agreement; and, (5) reads into the condition a distinction between "paid in full" and "satisfaction" that is unsupported by any authority. The trial court's order makes no findings on what constitutes "paid in full," and the majority's analysis effectively rewrites the parties' agreement to create a whole new contractual provision.
 

 Presuming the mortgage condition is ambiguous, it is undisputed plaintiff's attorney drafted the separation agreement. As such, the ambiguous agreement would be construed against her as the drafting party.
 
 Novacare Orthotics & Prosthetics E., Inc. v. Speelman
 
 ,
 
 137 N.C. App. 471
 
 , 476,
 
 528 S.E.2d 918
 
 , 921 (2000) ("[W]hen an ambiguity is present in a written instrument, the court is to construe the ambiguity against the drafter-the party responsible for choosing the questionable language." (citation omitted) ).
 

 The parties entered into the separation agreement on 19 October 2011. Plaintiff subsequently refinanced the mortgage on the former marital residence on her own initiative with BB & T on 21 November 2012 without defendant's prior knowledge or consent. Generally, "[w]hen you refinance, you pay off your existing mortgage and create a new one."
 

 *630
 
 A Consumer's Guide to Mortgage Refinancings (2008), https://www.federalreserve.gov/pubs/refinancings/ (last visited Jan. 22, 2019). Even though the term of plaintiff's new mortgage has a term seven years longer than the original mortgage, plaintiff received a direct and substantial financial benefit for doing so in the form of lower payments. Taking into account the time value of money, the $340.00 difference between the $1,4440.00 plaintiff will be receiving and the reduced amount plaintiff will be paying on the new mortgage, plaintiff is receiving a substantial benefit the parties did not bargain for.
 

 Included as a documentary exhibit to the record on appeal is a satisfaction of security instrument on the marital residence recorded with the Chatham County Registry at Book 1661, Page 937 on 9 January 2013. The satisfaction references a deed of trust for the parties' former marital residence recorded on 2 November 2010 in the Chatham County Registry at Book 1537, Page 826. The satisfaction states, in relevant part: "This Satisfaction terminates the effectiveness of the security instrument."
 

 No promissory note evidencing the debt and corresponding to the collateral secured by the 2010 deed of trust is included in the record on appeal. Based upon the trial court's erroneous interpretation of the mortgage condition in the separation agreement, it appears the trial court failed to make any findings of fact concerning whether the promissory note evidencing the 2010 mortgage debt on the former marital residence was "paid in full" when plaintiff refinanced the mortgage on 21 November 2012.
 

 *202
 
 Plaintiff testified her new mortgage payment is now $1,100.00 per month compared to $1,440.00 per month for the former mortgage. According to the deeds of trust included as documentary exhibits in the record on appeal, the original mortgage on the former marital residence was scheduled to be paid in full by 1 December 2020. After plaintiff refinanced, the new mortgage is scheduled to be paid in full 1 December 2027.
 

 The trial court's order and the majority's affirmation confers a financial benefit on plaintiff of $340.00 per month by allowing her to receive the conditional $1,440.00 per month former payment, even though she now has a lower monthly mortgage payment. The trial court's specific performance order does not acknowledge the $340.00 per month benefit plaintiff obtained from refinancing unilaterally and without defendant's knowledge or consent. Plaintiff's conduct raises conflicts and her hands are not clean to be awarded the equitable relief of specific performance.
 
 See
 

 Ray v. Norris
 
 ,
 
 78 N.C. App. 379
 
 , 384,
 
 337 S.E.2d 137
 
 , 141 (1985) ("The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands.").
 

 *631
 
 Whether the original mortgage on the former marital home was "paid in full" when plaintiff refinanced in November 2012 is an issue of fact, which must be resolved to determine whether the mortgage condition of the separation agreement to reduce defendant's alimony obligation was satisfied. The trial court's conclusion and decree ordering defendant to pay arrearages including the additional $1,440.00 per month since the date of plaintiff's refinance and until the date the original mortgage "was scheduled to be paid in full" is error and properly reversed. This matter should be remanded to the trial court for further fact finding of whether plaintiff "paid in full" the note for the original 2010 mortgage when she unilaterally refinanced in November 2012. Plaintiff is not entitled to equitable relief on this issue.
 

 The plain and unambiguous language of the mortgage condition must be applied.
 
 See
 

 Tyndall-Taylor,
 

 157 N.C. App. at 692
 
 , 580 S.E.2d at 61. If the trial court finds the note evidencing the mortgage on the former marital residence was "paid in full" when plaintiff unilaterally refinanced, such as by the lender loaning her the money to pay off the original mortgage debt and issuing and recording a new mortgage, then the plain language of the mortgage condition in the separation agreement would apply and be satisfied. Defendant would not be legally obligated to pay the additional $1,440.00 per month in alimony as of 21 November 2012, the date plaintiff accomplished her refinancing.
 

 Only if the trial court finds and concludes the note evidencing the 2010 mortgage on the former marital residence was not "paid in full" upon the refinance would defendant be obligated to pay $3,750.00. Defendant's payment would include the $1,440.00 per month former mortgage payment until such time as the 2010 original note and mortgage is "paid in full." The plain language of the separation agreement compels defendant's alimony obligation be reduced by $1,440.00 per month when the original debt is "paid in full."
 

 III.
 
 Conclusion
 

 I concur with the portions of the majority's opinion which affirm the trial court's denial of defendant's motion to set aside default, and I concur with the result to require defendant to re-pay the equity line of credit in exchange for the distribution and receipt of the asset purchased therewith.
 

 I respectfully dissent from that portion of the majority's opinion which affirms the trial court's interpretation that the unambiguous 2010 mortgage condition in the separation agreement means "[a]t such time that the date that the former marital residence was scheduled to be paid
 
 *632
 
 in full, prior to plaintiff refinancing" and specifically ordering arrearages and future payments in accordance therewith. The plain, unambiguous language of the mortgage condition indicates the parties' intent that defendant's alimony obligation would be reduced "at such time" as the 2010 original mortgage is "paid in full," and not at the time the mortgage was originally scheduled to be paid off. It is undisputed plaintiff received a substantial financial benefit from her unilateral refinancing to bar any equitable relief.
 
 *203
 
 Courts "must presume[ ] the parties intended what the language used clearly expresses, and the contract
 
 must be construed to mean what on its face it purports to mean
 
 ."
 
 Hagler
 
 ,
 
 319 N.C. at 294
 
 ,
 
 354 S.E.2d at 234
 
 (emphasis supplied). Neither the trial court, nor the majority of a panel of this Court, is free to substitute new or different provisions for what the parties themselves unambiguously agreed to be bound. The trial court and the majority opinion's holding effectively binds defendant to a new contract.
 

 Plaintiff receives a financial benefit in the form of substantially lower payments from her unilateral refinance of the mortgage on the former marital home. The consequence of her action was to trigger the agreed-upon condition precedent to reduce defendant's alimony by the amount of the former payment when the 2010 note and deed of trust evidencing the collateral and mortgage on the former marital residence was "paid in full."
 

 Were we to agree that the mortgage condition is ambiguous to allow parol or extrinsic evidence of the parties' intent, it is undisputed that plaintiff's attorney drafted the separation agreement. As such, any ambiguity in the agreement's provision must be construed against her as the drafting party.
 
 Novacare
 
 ,
 
 137 N.C. App. at 476
 
 ,
 
 528 S.E.2d at 921
 
 ("[T]he court is to construe the ambiguity against the drafter-the party responsible for choosing the questionable language."). Plaintiff is not entitled to equitable relief for consequences she brought about through her own unilateral actions.
 

 The trial court's order and the majority's affirmation is erroneous on this issue. I respectfully dissent.
 

 [1]
 

 Defendant also filed notice of appeal from the trial court's entry of summary judgment in favor of plaintiff in the separate action he previously filed to rescind or vacate the 19 October 2011 separation agreement and property settlement. That appeal was heard at the same time as defendant's appeal in the present action. This Court filed a separate opinion in that appeal.
 
 See
 

 Jones v. Jones
 
 ,
 
 240 N.C. App. 88
 
 ,
 
 772 S.E.2d 13
 
 (2015) (unpub.) COA14-236 (available at
 
 2015 WL 1201320
 
 ,
 
 240 N.C.App. 88
 
 ).