BROKERS, INC. v. HIGH POINT CITY BOARD OF EDUCATION

No. 7618SC700

(Filed 20 April 1977)

**Highways and Cartways § 9.3— construction contract — extra work — no change order executed — no extra compensation**

In an action to recover for work performed in excess of that specified under the terms of a written contract between the parties for the building of a road, which work plaintiff alleged was necessary in order to complete performance of the work called for in the contract, the trial court properly granted defendant's motion for judgment n.o.v. where the parties' contract specifically provided that all changes in the work must be authorized by a written change order, and authorization to perform the extra work for which plaintiff sought compensation was expressly denied by defendant's rejection of plaintiff's requests for change orders on two separate occasions; moreover, plaintiff was not entitled to recover on the basis of quantum meruit or an implied contract, since an express contract precludes an implied contract with reference to the same matter.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 2 April 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 8 February 1977.

Plaintiff, a grading contractor, brought this action to recover $29,700.00 for work performed in excess of that specified under the terms of a written contract between the parties, which work plaintiff alleged was necessary in order to complete performance of the work called for in the contract. Defendant answered and denied liability for the extra work.

At trial before a jury, plaintiff presented evidence, largely through the testimony of Dolen Bowers, its president, to show the following: Broker's, Inc., plaintiff herein, is engaged in the grading and paving business. Bowers has been in this type of business for 25 years, the last 15 years having been in his present capacity at Brokers, Inc. In January 1973, Bowers acquired a copy of a document entitled "SPECIFICATIONS FOR ROUGH GRADING AND STORM DRAINAGE WORK FOR SCHOOL PARK DRIVE FOR THE HIGH POINT CITY BOARD OF EDUCATION." Basing his bid in part on this document, Bowers submitted on 16 January 1973 a bid of $41,203.00 for the job, in the name of Broker's, Inc., as contractor, which was accepted by defendant. On 19 January 1973, plaintiff and defendant executed a standard form contract which provided that the work was to begin 1 February

1973 and to end 31 May 1973. Plaintiff thereafter moved its men and equipment to the job site and began building the road by stripping off the topsoil and clearing the land of stumps and debris. After completing one section of the road, plaintiff began running into problems in June 1973 while working on the remaining section which was to be built across a field. After about one foot of topsoil had been stripped, the equipment began miring up when the undercut excavations specified by the contract were attempted. Plaintiff's employees discovered that "they had run into some very unusual soil and very unusual ground that evidently was full of springs that had been backfilled with mud or something." These subsoil conditions, which existed for some 1500 feet, were not apparent when the site had been examined by Bowers, as "it just looked like a field that somebody had farmed on and that it would be very, very good moving dirt; that it would be very easy to work. . . " ; however, the ground "was so wet you couldn't even walk through it," as people who tried "would mire up to their waist in some places." Upon discovering these subsoil conditions, Bowers met at the job site with Leon Schute, the architect in charge of the project, to discuss possible solutions to the problem encountered. At this meeting, Bowers asked Schute to "give him a change order to go ahead and take out an additional at least six foot deeper than his plans and specifications called for in order to be able to fulfill his contract and give him the compaction test that was specified and had to be met in the contract." Schute told Bowers that he had no authority to issue such a Change Order but that Bowers could request one from the Board of Education. On 11 July 1973 Bowers submitted for approval two requests for Change Orders: the requested Change Order # 1 would have provided for an average additional depth of six feet of undercut "from Station Number 1500 to Station Number 2100" at an additional cost of $17,934.00; the requested Change Order # 2 would have provided for an additional $5.90 per lineal foot be added to the contract price in order to install a French drain after the excavation in the requested Change Order # 1 had been completed. After being informed that both requested Change Orders had been rejected by the Board, Bowers told Schute that in his opinion the job could not be finished without this extra excavation and that a French drain would have to be installed to carry off the water in that area. Bowers then asked Schute if he could get a Change Order for a French drain, and again Schute told him to make a request. On 14 August 1973 Bowers re-

quested Change Order # 3 which would provide that the sum of $8.90 per lineal foot be added to the original contract in order to furnish and install a French drain. Getting no immediate response on this matter, plaintiff pulled off the job for "about a month or a month and a half" until Bowers received a call from Schute on 19 September 1973 in which Schute stated:

> "Well, I've got a change order for you on the French drain but they won't give me as much as you wanted, but they will let me go up to a thousand feet of French drain."

After receiving this oral confirmation for a Change Order covering the French drain, plaintiff began installation of the drain; however, according to Bowers, approximately 6 feet and in some places as much as 12 feet more than the undercut line shown on the plans was excavated "in order to get the equipment in even to install a French drain." On 10 October 1973, a written Change Order for the installation of the French drain at an added contract price of $10,502.00 was approved by defendant. On 27 November 1973, Bowers sent to Schute a "Request for Change Order # 2" seeking to recover an additional $29,700.00 for the removal of 5400 cubic yards of unsuitable soil and for the replacement of the same amount by suitable soil. By letter dated 4 December 1973, the request for compensation for the extra excavation was denied. On 29 January 1974 a meeting was held, attended by Bowers, Schute, and two members of defendant Board of Education, at which it was demanded that plaintiff finish the job. Bowers testified that he assented to this demand after "they agreed that if I would go ahead and finish the job, that this would not jeopardize my rights to come back to the court and ask for this money."

After plaintiff rested, defendant's motion for a directed verdict was denied. Defendant then presented evidence to show the following:

Plaintiff neither requested nor picked up the plans and specifications for the project, which had been available for inspection by all prospective bidders since 25 October 1972, until 15 January 1973, the deadline for submitting bids being 2:00 p.m. on 16 January 1973. Included in said plans and specifications was a sheet entitled "Instructions to Bidders" which recommended the following as to the examination of the site:

> "Before submitting a proposal, bidders should visit the site of the work, fully inform themselves as to all conditions

and limitations, and shall include in the proposal a sum to cover cost of all items included in the Contract."

Also contained in this package were drawings of the proposed project, including one of the area in controversy labeled S-2. At the bottom of this drawing appeared the following language:

"This area is new fill over old lake bottom. Excavate to limit of cut shown on plans and to depth shown on profile. Backfill to new street subgrade and compact in accordance with specification requirements."

Of the six bids received, plaintiff's bid of $41,203.00 was the lowest; the other five bids ranged from a high of more than $75,000.00 to a low of more than $57,000.00. Appearing before the defendant Board on 18 January 1973, Bowers sought to increase plaintiff's bid by $9,846.00 based on alleged miscalculation. The Board denied his request, giving him the option to forfeit his 5% bid bond of approximately $2,000.00 or to take the contract. Plaintiff elected to keep the contract. Although the contract required that the work be substantially completed within 120 days and contained a penalty clause specifying $25.00 per day liquidated damages for the failure to do so, the clause was not invoked, despite the fact that plaintiff took around 450 days to complete the project, because of bad weather at the beginning of the contract period and because of the water problems encountered at the site requiring the installation of the French drain. The Change Orders first requested were denied because defendant felt that the installation of the French drain would sufficiently dry out the area to enable plaintiff to fulfill its contract obligations, and that procedure was the only additional work which was necessary. After the French drain was installed, the problem seemed to clear up. Plaintiff was never authorized to do the extra undercutting below the excavation line set forth in the plans and specifications, and in Schute's opinion, it was not necessary to cut below the excavation line to install the French drain.

At the conclusion of defendant's evidence, defendant renewed its motion for directed verdict, which the court again denied. The case was submitted to the jury, which answered issues in favor of plaintiff. Defendant's motion for judgment notwithstanding the verdict was allowed, and plaintiff appealed.

*Stephen E. Lawing for plaintiff appellant.*

*D. P. Whitley, Jr., and Hugh C. Bennett, Jr., for defendant appellee.*

PARKER, Judge.

The only question presented is whether the trial court erred in granting judgment for defendant notwithstanding the verdict returned by the jury for plaintiff. We find no error.

When passing on a motion for judgment notwithstanding the verdict, the same standards applicable to a motion for directed verdict are to be applied. Thus, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to support a verdict for plaintiff. *Hargett v. Air Service* and *Lewis v. Air Service,* 23 N.C. App. 636, 209 S.E. 2d 518 (1974).

The evidence in the present case, when viewed in the light most favorable to the plaintiff, shows the following: Pursuant to a set of plans and specifications prepared by defendant's architect, plaintiff submitted the low bid on 16 January 1973 on a grading and storm drainage project for a new road to be built in Hight Point. Three days thereafter the parties executed a standard form contract for this job. While performing the undercut excavations specified by the contract, plaintiff began experiencing extremely miry subsoil conditions not apparent on the surface of the land. Because plaintiff's heavy equipment could not move over such terrain, plaintiff submitted two requests for Change Orders for defendant's consideration pursuant to Article 22 of the contract which provides:

"ARTICLE 22
CHANGES IN THE WORK

22.1 The Owner without invalidating the Contract may order Changes in the Work consisting of additions, deletions, or modifications, the Contract Sum and the Contract Time being adjusted accordingly. All such Changes in the Work shall be authorized by written Change Order signed by the Owner or the Architect as his duly authorized agent.

22.2 The Contract Sum and the Contract Time may be changed only by Change Order."

By these requests, plaintiff sought permission to undercut an additional six feet and to install a French drain after making the additional excavation; both requests for Change Orders were denied by defendant. Finding that the job could not be finished unless the water was drained from the area, plaintiff proposed another Change Order for the installation of a French drain. Plaintiff was notified verbally by defendant's architect to proceed on the work requested, which plaintiff did. However, in installing the French drain plaintiff excavated from 6 feet to 12 feet more than the specifications called for. After most of this portion of the work was completed, defendant sent plaintiff written approval of its Change Order request to install the French drain at an addition of $10,502.00 to the contract price. A little over a month later, plaintiff requested an additional $29,700.00 for the extra excavation work, which request defendant denied. After the parties agreed to waive Article 15 of the Contract, which provides that "[a]ll claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration," plaintiff finished the project and then brought this action seeking compensation for the extra work.

We affirm the trial court's action in granting defendant's motion for judgment n.o.v. Where the language of a contract is plain and unambiguous the court rather than the jury will declare its meaning. *Yates v. Brown*, 275 N.C. 634, 170 S.E. 2d 477 (1969). Article 22 of the written contract specifically states that all "Changes in the Work shall be authorized by a written Change Order signed by the Owner or the Architect as his duly authorized agent," and that "[t]he Contract Sum and the Contract Time may be changed only by Change Order." All of the evidence shows that the only written Change Order issued in this case was the one which authorized installation of the French drain and which increased the contract price by $10,502.00. Plaintiff's contention that the owner should be bound to pay the contractor the additional cost for the excavation in excess of the contract specifications, absent a Change Order issued in the manner and as authorized in the contract between owner and contractor, is untenable. *See Electric Co. v. Newspapers, Inc.*, 22 N.C. App. 519, 207 S.E. 2d 323 (1974). Neither can we agree with plaintiff's argument that "[s]uch extra work was performed at the 'expressed or implied request' of the defendant," and therefore plaintiff should be entitled to recover on the basis of quantum meruit or an implied contract.

"It is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 713, 124 S.E. 2d 905, 908 (1962). "There cannot be an express and an implied contract for the same thing existing at the same time. It is only when parties do not expressly agree that the law interposes and raises a promise. No agreement can be implied where there is an express one existing." 66 Am. Jur. 2nd, Restitution and Implied Contracts, § 6, pp. 948, 949. *Campbell v. Blount*, 24 N.C. App. 368, 210 S.E. 2d 513 (1975), is distinguishable. In *Campbell* there was evidence that, while the work was in progress, the parties failed to adhere to the provisions in their written contract relative to desired changes in construction, thereby abandoning those provisions. Here, not only were the provisions relative to the changes in the construction project adhered to while work was in progress, but authorization to perform the very work for which plaintiff now seeks recovery was expressly denied to plaintiff by defendant's rejection of plaintiff's requests for Change Orders on two separate occasions.

That plaintiff encountered difficulties which it failed to anticipate when making its bid did not entitle it to the increased compensation it now seeks to recover. All bidders were notified that the area involved was "new fill over old lake bottom," and all were instructed to inspect the site before submitting their bids. The hazard encountered, subsurface soil conditions on which it was difficult to employ heavy equipment, was the type of risk which any bidder should have known he would be called upon to assume if his bid should be accepted. Moreover, that in plaintiff's judgment it was necessary for plaintiff to excavate deeper than called for in the specifications in order to complete its contract did not justify plaintiff in performing the excess excavation at defendant's expense. The proper depth of the cut to be made was an engineering decision, which defendant employed the architect to make. In excavating deeper than the architect's specifications provided, plaintiff simply performed work in excess of that called for in its written contract and which defendant not only did not request plaintiff to perform but which it twice notified plaintiff it would not authorize plaintiff to perform. Defendant is not liable for the unauthorized extra work for which plaintiff seeks to be compensated.

The judgment appealed from is

Affirmed.

Judges MARTIN and ARNOLD concur.