PIEDMONT BANK AND TRUST COMPANY v. OBIE STEVENSON AND SHIRLEY M. STEVENSON

No. 8522DC155

(Filed 4 February 1986)

Guaranty § 1— guaranty agreement—intention of parties—jury question

The question of whether the parties intended an ambiguous guaranty agreement to cover only one loan or to also cover further loans was for the jury.

Judge BECTON concurring in the result.

Chief Judge HEDRICK dissenting.

APPEAL by plaintiff from *Fuller, Judge.* Judgment entered 20 August 1984 in District Court, IREDELL County. Heard in the Court of Appeals 23 September 1985.

This is a civil action instituted by Piedmont Bank and Trust Company (herein the Bank) to recover the outstanding indebtedness on a negotiable promissory note executed by defendant Obie Stevenson (herein Stevenson) on 24 July 1979 in the principal amount of $4,188.73. This loan was the third renewal of a note executed by Stevenson on 24 May 1978 in the principal amount of $4,500.00. The 24 July 1979 note was payable in ninety (90) days. Stevenson defaulted on this obligation; the record does not reveal whether or not Stevenson was served with process.

Defendant Shirley Stevenson (herein Mrs. Stevenson) and Stevenson were husband and wife at the time the note which is the subject of this lawsuit was signed. They were divorced in October 1981. On or about 16 September 1977, the same day that Stevenson executed a promissory note for $5,642.67, Mrs. Stevenson executed an "Unconditional Guaranty." Under the guaranty, Stevenson was the primary obligor, Mrs. Stevenson was the guarantor and the Bank was the obligee. The document was labeled UNCONDITIONAL GUARANTY and contained the following language:

WHEREAS, the above PRIMARY OBLIGOR(S) (hereinafter collectively termed "Customer") desire(s) to obtain extensions of credit and/or a continuation of credit extensions and/or to engage in business transactions and enter into various contractual relationships and otherwise to deal with PIEDMONT BANK & TRUST COMPANY (hereinafter termed "PB&T"); and

WHEREAS, PB&T is unwilling to extend or continue to extend credit to and/or to engage in business transactions and enter into various contractural [sic] relationships with, and otherwise to deal with Customer; unless it receives an unconditional and continuing, joint and several guaranty from the above identified, undersigned GUARANTOR(S) (hereinafter collectively termed "Guarantor"), covering all "Obligations of Customer," as hereinafter defined.

Piedmont Bank and Trust Co. v. Stevenson

NOW, THEREFORE, in consideration of the promises and of other good and valuable consideration, and in order to induce PB&T from time to time, in its soles [sic] discretion, to extend or continue to extend credit (with or without security) to and/or to engage in business transactions and enter into various contractual relationships with Customer, (Without limiting the generality of the foregoing, this Guaranty is being given in order to induce PB&T to lease and/or sell real, personal and/or mixed property to Customer, to purchase or discount any Acceptances, Accounts, Chattel Paper, Checks, Contracts, Contract Rights, Drafts, General Intangibles, Instruments, Investment Securities, Land Contracts, Purchase Money Security Agreements (Conditional Sale Contracts of real and/or personal property), Real and/or Personal Property Leases, or any other instruments or evidence of indebtedness (with or without recourse) upon which Customer is or may be liable as maker, co-maker, indorser, acceptor, guarantor, surety or otherwise) and otherwise to deal with Customer; Guarantor (jointly and severally, if more than one) hereby absolutely and unconditionally guarantees to PB&T and its successors and assigns the due and punctual payment of all liabilities and obligations of said Customer to PB&T, primary or secondary (whether by way of indorsement or otherwise), whether now existing or hereunder arising, whether arising out of contract(s), tort(s) or otherwise, whether created directly with PB&T or acquired by PB&T through assignment, indorsement or otherwise; whether matured or unmatured; whether absolute or contingent; as and when the same become due and payable (whether by acceleration or otherwise), in accordance with the terms of any such instruments, accounts receivable and other security agreements, land and/or other contracts, drafts, leases, chattel paper, debts, obligations or liabilities evidencing any such indebtedness, obligations or liabilities, including all renewals, extensions and/or modifications thereof (all liabilities and obligations of the Customer to PB&T, including all of the foregoing, being hereinafter collectively termed "Obligations of Customer"); provided, however, that if and and [sic] only if an amount is here specified; to wit:

_____ ($5642.67),

(Leave blank, if liability hereunder is unlimited)

then, the maximum liability, jointly and severally, of the undersigned Guarantors hereunder, at any one time outstanding, with respect to the aggregate principal amount of the "Obligations of Customer," shall not exceed the sum of money above specified, plus all interest or Finance Charges, Costs of Court and the reasonable attorneys' fees of PB&T.

Under the covenants and agreements, the guaranty provided among other things that (i) the guarantor waived notice of extensions of credit by the Bank, (ii) the guaranty shall remain a continuing guaranty of payment and (iii) the guarantor could terminate the guaranty by written notice to an officer of the Bank actually involved in the transactions with respect to all obligations arising more than five (5) banking days after receipt of said notice by the Bank officer.

In the years preceding 1977, the Bank had made numerous loans to Stevenson dating back to 1964. Mrs. Stevenson had co-signed on some of the previous loans, but plaintiff asked her to sign a guaranty in connection with this 16 September 1977 loan. There was some evidence that the $5,642.67 note was the consolidation of a prior loan with a new loan. The uncontradicted evidence was that the $5,642.67 loan was fully paid and that no part of the loan which is the subject matter of this lawsuit was an extension or renewal of that loan. David Brown (herein Brown), the loan officer who handled Stevenson's transactions, testified that the Bank was not extending a line of credit to Stevenson when the guaranty was executed.

According to Mrs. Stevenson's testimony, on or before 24 May 1978, she went to her regular branch of the Bank and after being told that both Brown and Bobby Setzer, the people with whom she usually dealt were no longer at that branch, she spoke with Daniel Beaver (herein Beaver), an assistant vice president and loan officer. Mrs. Stevenson asked what her husband's balance was, and informed Beaver that she was obtaining a second mortgage to pay off the loan and that once it was paid, she would not be responsible for any more loans to Stevenson. According to Mrs. Stevenson, Beaver indicated that this course of action would be "okay." The second mortgage was obtained and the Bank paid in full. Beaver testified that Mrs. Stevenson said that she and Stevenson were taking out or had taken out a second mortgage to

pay off the debt, and she would not be liable on any more loans unless she personally came in and signed.

In the meantime, unbeknownst to Mrs. Stevenson, her husband was talking with Brown and through him obtained the $4500 loan which is the subject of this suit. According to Brown, he did not learn until after the loan to Stevenson had been made that Mrs. Stevenson had told Beaver she would not be liable on any more loans with Stevenson.

Prior to trial, both parties moved for summary judgment and both motions were denied. At trial plaintiff called Mrs. Stevenson as a witness; and at the close of plaintiff's evidence, defendant Mrs. Stevenson moved for directed verdict, which was granted. The Bank appeals.

*Clontz and Clontz by Ralph C. Clontz, III for plaintiff-appellant.*

*Roger Lee Edwards for defendant-appellee.*

PARKER, Judge.

Plaintiff has brought forward three assignments of error, namely, the trial court's denial of its motion for summary judgment; the trial court's admission of parol evidence which contradicted the terms of the guaranty; and the trial court's granting of Mrs. Stevenson's motion for directed verdict and denial of plaintiff's motion at the close of plaintiff's evidence. We consider the issue raised by the third assignment of error first.

In an action on a contract, the intention of the parties to the contract must be determined from the language of the contract, the purpose and subject matter of the contract and the situation of the parties. *Adder v. Holman & Moody, Inc.,* 288 N.C. 484, 219 S.E. 2d 190 (1975). When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court. *Brokers, Inc. v. High Point City Board of Education,* 33 N.C. App. 24, 234 S.E. 2d 56, *disc. rev. denied,* 293 N.C. 159, 236 S.E. 2d 702 (1977), and the court cannot look beyond the terms of the contract to determine the intentions of the parties. *Renfro v. Meacham,* 50 N.C. App. 491, 274 S.E. 2d 377 (1981). However, when there is ambiguity in the language used, the intent of the parties is a question for the jury and parol evidence is admissible

Piedmont Bank and Trust Co. v. Stevenson

to ascertain that intent. *Root v. Allstate Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968).

Whether or not the language of a contract is ambiguous or unambiguous is a question for the court to determine. Applying the rules of construction that words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible, we find that the guaranty agreement in the instant case is not clear and unambiguous. Certain language such as "continuing unconditional guaranty" and "all Obligations of Customer" indicates that the guaranty was intended to cover future loans to Stevenson, but the phrase "arising hereunder" could be interpreted to limit the guaranty to loans given contemporaneously with the execution of the guaranty. The language "this Guaranty is being given in order to induce PB&T . . . to purchase or discount Acceptances, Accounts, Chattel Paper, Checks, Contracts, Contract Rights . . . or any other instruments of indebtedness . . . upon which Customer is or may be liable . . .," is consistent with future advances or extension of a line of credit, but the limitation of the maximum amount of liability to exactly $5,642.67 implies an intention to guarantee only a single loan transaction. Limitations as to amount beyond which a guarantor will not be liable are held to indicate a continuing guaranty where that amount is left blank in the instrument, or where the amount is some arbitrary figure. *See generally* 38 Am. Jur. 2d *Guaranty* § 25 (1968), and cases cited therein.

In the instant case, Mrs. Stevenson's defense raises two questions. First, was the guaranty intended to be a specific guaranty guaranteeing only the $5,642.67 loan or was it intended to be a continuing guaranty covering future loans. Second, was the Bank estopped by Mrs. Stevenson's conversation with Beaver and his response. If the answer to the first question is that the guaranty was a specific guaranty, that answer is outcome determinative, and the estoppel question need not be decided.

On a motion for directed verdict, the evidence must be viewed in the light most favorable to the party opposing the motion and the opponent is entitled to every reasonable inference which may be legitimately drawn from the evidence and all conflicts in the evidence resolved in favor of the opponent. *Potts v. Burnette*, 301 N.C. 663, 273 S.E. 2d 285 (1981).

We are not unmindful of the rule that a contract is to be construed against the party drafting the document. Similarly, we recognize that there is authority that construction of contracts of adhesion, such as the one at issue in this case, is for the court when the underlying facts are not in dispute. *See* 3 Corbin on Contracts §§ 554, 559 (C. Kaufman Supp. 1984). However, our research discloses that in this jurisdiction, except in construing insurance contracts, our courts have submitted the question of intent in an ambiguous contract to the jury. As stated in *Hite v. Aydlett*, 192 N.C. 166, 170, 134 S.E. 419, 421 (1926):

> "It is a well-established general rule that if the parties reduce their entire contract or agreement to writing, whether under seal or not, the court will not hear parol evidence to vary or change it, unless for fraud, mistake or the like; but . . . if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement between the parties; and in such a case what was meant, is for the jury, under proper instructions from the court." Davis, J., in *Cumming v. Barbour*, 99 N.C., 332.

*See also Root, supra; Silver v. Board of Transportation*, 47 N.C. App. 261, 267 S.E. 2d 49 (1980). In view of the foregoing, the question of the parties' intent, *i.e.*, whether the guaranty covered only the one loan or future loans to Stevenson was for the jury. The directed verdict was, therefore, improvidently granted.

For purposes of the new trial, we note that with respect to the estoppel issue, the evidence as to whether Mrs. Stevenson had her conversation with Beaver before or after the loan at issue was made raised a question of fact for the jury. As our ruling on the third assignment of error has also disposed of plaintiff's arguments in its first and second assignments of error, these assignments are overruled.

New trial.

Judge BECTON concurs in the result.

Chief Judge HEDRICK dissents.

Judge BECTON concurring in the result.

Hesitantly, I concur in the result. Although the facts and equities tend to favor the defendant, it is not our task, considering the facts of this case, to determine the intent of the parties, to resolve the estoppel issue, or, in any way, to weigh the facts. Those matters are for a jury which may very well rule for the defendant.

Chief Judge HEDRICK ·dissenting.

This case was heard in the Court of Appeals on 23 September 1985. I received the majority opinion authored by Judge Parker and concurred in by Judge Becton on 30 January 1986. My analysis of the majority opinion together with the record in this case compels me to the conclusion that the directed verdict for defendant Shirley Stevenson was proper. The guaranty agreement, bearing no date, in my opinion, clearly and unambiguously obligated defendant to pay only $5,642.67, the amount of the indebtedness written into the agreement. Furthermore, I believe that the evidence that defendant obtained from the bank manager the amount due on all of her husband's notes and obligations, borrowed that amount of money from the bank, secured that obligation on a second deed of trust on her home and paid all of her husband's obligations, such evidence being uncontroverted and said facts being admitted by the bank's manager, is sufficient to discharge defendant from any obligations under the "so-called" guaranty agreement. It is inconceivable to me that the bank is not estopped to collect more from this defendant as a matter of law.

I vote to affirm.