GZO, LLC v. LKN, Inc., 2020 NCBC 10.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

17 CVS 11969

GZO, LLC; ADAM MAISANO,
Individually, as a Member of GZO,
LLC; and DARCIA BLACK,
Individually, as a Member of GZO,
LLC,

Plaintiffs,

v.

LKN, Inc. d/b/a SAFEWAY
CHEVROLET; LAWRENCE K.
NEUWIRTH, Individually and as a
Manager of GZO, LLC; and LE
REALTY, LLC,

Defendants.

**ORDER AND OPINION GRANTING
MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

1. THIS MATTER is before the Court on Defendants' Motion In the Cause to Enforce Settlement Agreement ("Motion to Enforce"), together with Plaintiffs' related Motion to Allow Supplemental Material Supporting Plaintiffs' Opposition to, or Alternatively Discovery Regarding, Defendants' Motion in the Cause to Enforce Settlement ("Motion to Supplement"). The Court has considered the record, including the materials offered with the Motion to Supplement, and determines and

concludes that both the Motion to Supplement and the Motion to Enforce should be GRANTED.

> *LEDOLAW, by Michelle A. Ledo, for Plaintiffs GZO, LLC; Adam Maisano; and Darcia Black*

> *Blue LLP, by Daniel T. Blue, Jr. and Dhamian A. Blue, for Defendants LKN, Inc.; Lawrence K. Neuwirth; and LE Realty, LLC*[1]

Gale, Judge.

## I. INTRODUCTION

2. Plaintiff GZO, LLC ("GZO") and Defendant LKN, Inc. ("LKN") entered into an asset purchase agreement (the "APA") for the purchase and sale of Safeway Chevrolet Dealership (the "Dealership"), which failed, but only after GZO had operated the Dealership for nine months. (Compl. ¶¶ 19, 26, 47, ECF No. 4.) Numerous disputes arose and numerous legal proceedings were initiated. GZO and its related interests (collectively "Plaintiffs") and LKN and its related interests (collectively "Defendants") entered a comprehensive settlement of all claims within a few days of the filing of the litigation in this Court, documented by an executed multi-page agreement negotiated among the parties and their respective counsel (the "Settlement Agreement"). (ECF No. 71.2.)

3. The Settlement Agreement provides for LKN to make cash payments to GZO. The total amount was preliminarily stated as $1,006,000 ("Preliminary Settlement Amount"), with the actual final payment ("Final Payment") depending

---

[1] Each of the parties were represented in the litigation by different counsel when and before the Settlement Agreement now at issue was executed.

upon a potential adjustment to the Preliminary Settlement Amount determined by a forensic accounting of whether GZO had operated the Dealership at a profit or at a loss. (Settlement Agreement ¶ 1.) The first two payments were in fixed amounts totaling $500,000, (Settlement Agreement ¶¶ 1a–b), and these payments have been made and accepted, (Mot. Enforce ¶ 2, ECF No. 69). The Final Payment then due is $506,000 as adjusted by the forensic accountant's determination. (Settlement Agreement ¶ 5d.) The Settlement Agreement included procedures the forensic accountant was to follow in making his determination. (Settlement Agreement ¶¶ 5a–c.)

4. The chosen forensic accountant, Roy Strickland of Dixon Hughes Goodman ("Strickland"), determined that GZO operated the Dealership at a loss. (Letter from Strickland 1 ("Strickland Report"), ECF No. 71.4.) LKN tendered a final settlement payment calculated as $506,000 less the amount of that determined loss. (Defs.' Mem. Supp. Mot. Enforce 12–13, ECF No. 70.) GZO refused the tender and contends that Strickland failed to follow the procedures of the Settlement Agreement, thereby exceeding his authority, and when his findings are properly conformed to the provisions of the Settlement Agreement, GZO operated the Dealership at a profit, the amount of which should be added to $506,000 when calculating the Final Payment owed to GZO. (Pls.' Mem. Opp'n Mot. Enforce 3, ECF No. 71.)

5. By its Motion to Enforce, LKN seeks an order compelling GZO to accept the tendered Final Payment. By its Motion to Supplement, GZO offers materials it contends should be considered in opposition to the Motion to Enforce and which when

considered demonstrate Strickland's error and how the Final Payment should be calculated as GZO contends.   (Pls.' Mot. Allow Suppl. Material, ECF No. 78.)

6.     In its discretion, and over Defendants' opposition, the Court considers the offered supplemental materials and gives them a broader reading than the Rules of Evidence require.  However, having done so, the Court concludes that the materials do not support Plaintiffs' position, that the Court must honor and enforce the clear and unequivocal agreement embodied in the Settlement Agreement that the forensic accountant's determination is final and binding, and that GZO is obligated to accept LKN's tender of its Final Payment.  (Settlement Agreement ¶ 5d.)

## II.    PROCEDURAL HISTORY

7.     Litigation quickly followed when the APA failed to close.  Defendants dismissed an earlier action in Pender County, and Plaintiffs then initiated this action in Wake County on September 29, 2017, (Compl.), simultaneously designating the action as a complex business case pursuant to N.C.G.S. § 7A-45(a)(1), (ECF No. 5). The case was designated as a complex business case by the Chief Justice on October 3, 2017, (ECF No. 3), and assigned to Hon. Adam M. Conrad on October 4, 2017, (ECF No. 2).

8.     Judge Conrad scheduled an October 10, 2017 hearing on Plaintiffs' Motion for Temporary Restraining Order, (ECF No. 10), but the hearing did not proceed because the parties advised the Court that they had entered the Settlement Agreement, represented as a full and complete agreement setting forth all terms of their settlement of the disputed claims, (ECF No. 11).   The parties then presented

the Court with the Consent Settlement Order called for by the Settlement Agreement, which Judge Conrad entered on October 10, 2017. (ECF No. 12.) Among its other provisions, the Consent Settlement Order provides that the Court retains jurisdiction over this action for consideration and disposition of any motion for violation of any its terms. (Settlement Agreement ¶ 2e.)

9. Plaintiffs dismissed the action on October 11, 2017. (ECF No. 13.)

10. In November 2017, both parties filed motions requesting the Court to enforce provisions of the Settlement Agreement. (Pls.' Mot. Order Show Cause, ECF No. 15; Defs.' Mot. Order Show Cause, ECF No. 19.) Plaintiffs and Defendants each again affirmed that they had entered a full and final settlement agreement. (Pls.' Mot. Order Show Cause ¶ 1; Defs.' Mem. Opp'n Mot. Order Show Cause 1–2, ECF No. 22.)

11. On December 12, 2017, Judge Conrad entered an Order requiring Defendants to appear at a hearing on January 8, 2018, deferred to January 22, 2018, to show cause why they should not be held in civil or criminal contempt. (ECF Nos. 35, 54.)

12. At the January 22, 2018 hearing, while not challenging the Court's jurisdiction to to enforce the Settlement Agreement otherwise, Defendants contended that the Court could not utilize a contempt sanction because the Consent Settlement Order only adopted the parties' agreement without the Court having made its own findings of fact. (Tr. Hearing 11:5–14:13, ECR No. 70.4.) However, the parties also advised the Court that issues underlying Plaintiffs' Motion to Show Cause had been

or would soon be resolved without Court intervention. (Tr. Hearing 65:23–66:3, 66:25–67:4, 75:1–77:6.) As a result of this agreement, Judge Conrad was not required to further consider the Court's power to enter a contempt sanction. On January 25, 2018, Judge Conrad withdrew the Order to Show Cause. (ECF No. 55.)

13. Prior to the filing of the Defendants' Motion to Enforce, the Court was aware of no further controversy regarding the Settlement Agreement.

14. On April 4, 2018, the parties retained Strickland as the neutral forensic accountant to make the profitability determination specified by Section 5 of the Settlement Agreement. (Strickland Report 1.)

15. Sometime prior to April 12, 2018, LKN sold the Dealership to another buyer. (Defs.' Mot. Opp'n Suppl. Material 1, ECF No. 84.) GZO then initiated a new action in Wake County Superior Court, 18 CVS 4417, ("New Action") asserting that Defendants had failed to provide GZO with the required deed of trust securing Defendants' obligations under the Settlement Agreement. (Pls.' Mem. Opp'n Mot. Enforce 3.) Neither party sought to designate the New Action as a complex business case or to have it assigned to Judge Conrad.

16. On August 23, 2018, Strickland issued his report reflecting his determination that GZO had operated the Dealership at a loss. (Strickland Report 6.)

17. Plaintiffs amended their complaint in the New Action to challenge Strickland's finding, and also moved in that action for pre-judgment attachment of monies held as a result of LKN's sale of the Dealership to another entity. (Defs.'

Mem. Supp. Mot. Enforce 20.) The present record does not include any order or transcript of hearing in the New Action, but counsel advise that Hon. Robert F. Floyd, Jr., when presiding over a hearing in the New Action, opined that matters related to the Settlement Agreement should be determined solely by this Court, and that Plaintiffs' request that Judge Floyd reconsider his finding is outstanding.

18. On August 20, 2019, Defendants filed their Motion to Enforce.

19. On September 19, 2019, the case was reassigned to the undersigned for further proceedings. (ECF No. 72.)

20. On October 28, 2019, the Court heard oral argument on Defendants' fully briefed Motion to Enforce. Plaintiffs opposed the Motion to Enforce on two separate grounds. First, Plaintiffs contend that the Court does not have jurisdiction to grant the Motion to Enforce. In that regard, Plaintiffs contend that the Court lost jurisdiction when the underlying action was dismissed, notwithstanding that Plaintiffs themselves had filed a motion seeking to have this Court enforce the Settlement Agreement after that dismissal. Alternatively, Plaintiffs contend that Defendants should be estopped from seeking the benefit of this Court's jurisdiction because it earlier challenged the Court's authority to issue a contempt citation. Second, assuming the Court has jurisdiction, Plaintiffs challenge the Motion to Enforce on its merits, contending that there are contested material facts as to whether Strickland exceeded his authority under the Settlement Agreement and made an erroneous determination that cannot be binding notwithstanding the provision in the Settlement Agreement that it is. (Pls.' Mem. Opp'n Mot. Enforce 3.)

21. Seeking to support their second contention, Plaintiffs' current counsel advised that Strickland's conversation with Plaintiffs' prior counsel admitted his error and his potential willingness to so testify by affidavit.

22. Although Defendants vigorously argued against any collateral attack on Strickland's determination, the Court elected to defer ruling on the Motion to Enforce to allow Plaintiffs' counsel an opportunity to secure the affidavit she anticipated. In doing so, the Court neither made nor predicted a ruling on whether such an affidavit should ultimately be considered, and if so, what its effect might be.

23. On November 14, 2019, the parties filed a Joint Status Report indicating that no affidavit from Strickland would be forthcoming. (ECF No. 77.)

24. Plaintiffs also on November 14, 2019, filed their Motion to Supplement, accompanied by affidavits by GZO's members attesting to their expectations when entering the Settlement Agreement, and later filed an informal transcript of a phone call between Plaintiffs' former counsel and Strickland. (Audio Recording, ECF No. 81.12; Nunnery Aff., ECF No. 81.13; Black Aff., ECF No. 81.14.)

25. Defendants again oppose Plaintiffs' Motion to Supplement, contending that the Settlement Agreement must be read and enforced according to its four corners. (Defs.' Mot. Opp'n Suppl. Material.)

26. The Motion to Enforce and the Motion to Supplement have been fully briefed and are ripe for ruling. The Court elects to rule on the Motion to Supplement without further oral argument pursuant to B.C.R. 7.4.

## III.    ADDITIONAL BACKGROUND

27.    The Court does not make findings as to contested material issues of fact when ruling on the Motion to Enforce.  However, it may rule based on uncontested record facts for which the opposing party has presented or forecasted no competent opposing evidence.  *See Old Southern Life Ins. Co. v. Bank of North Carolina, N.A.*, 36 N.C. App. 18, 26, 244 S.E.2d 264, 269 (1978) (concluding that summary judgment was proper where "defendant failed to offer competent evidence to contradict plaintiff's evidence and raise a genuine issue of fact").  Unless stated otherwise, the record establishes that the following facts are uncontested.

28.    Defendant Lawrence K. Neuwirth ("Neuwirth") owns Defendant LKN and operated the Dealership in Burgaw, North Carolina from as early as 1999.  (Settlement Agreement 1.)  Other Defendants are entities related to operating the Dealership.

29.    In December 2016, GZO and LKN entered the APA to provide for the sale of the Dealership contingent on General Motors approving a transfer of LKN's franchise agreement.  (Settlement Agreement 1.)  Anticipating General Motors' approval, GZO took possession of and managed the Dealership between January 1, 2017 and October 10, 2017.  (Settlement Agreement 1.)  Other Plaintiffs are GZO's members.

30.    Ultimately, General Motors did not approve the transfer of LKN's franchise to GZO.  The APA's failure to close led to a number of disputes and multiple

administrative and court proceedings. (Order Show Cause & Notice Hr'g ¶¶ 2–3, ECF No. 35; Settlement Agreement 1.)

31. The parties participated in a voluntary mediation within a few days of this action having been filed on September 29, 2017. (Consent Order ¶ 1.) The parties entered their comprehensive ten-page Settlement Agreement now at issue on October 4, 2017. The Court highlights only those terms of the Settlement Agreement that are pertinent to the Motion to Enforce.

32. The Settlement Agreement is governed by North Carolina law. (Settlement Agreement ¶ 25.) It contains a merger clause indicating that the Settlement Agreement and its attachments constitute the parties' sole agreement, with neither having relied on or been induced by promises outside the express terms of the Settlement Agreement, and the parties agreed that its terms should not be construed against the drafter. (Settlement Agreement ¶¶ 19–20.) *See CB&H Bus. Servs., LLC v. J.T. Comer Consulting, Inc.*, 184 N.C. App. 720, 723, 646 S.E.2d 843, 845 (2007) (citing *Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000)) (holding that because there was no ambiguity in the agreement between the parties that the court was not required to construe the agreement against the drafter).

33. In addition to cash payments, the settlement consideration included, *inter alia,* GZO's release of the Dealership back to LKN on or before October 10, 2017, (Settlement Agreement ¶ 4), cash payments to GZO, (Settlement Agreement ¶¶ 1, 5),

a mutual release of claims, (Settlement Agreement ¶¶ 6–7), and GZO's retaining possession of certain used cars, (Settlement Agreement ¶ 9).

34. GZO is to receive cash payments to GZO in three installments. (Settlement Agreement ¶¶ 1a–1c.) The first two totaling $500,000 for fixed amounts of $200,000, (Settlement Agreement ¶ 1a), and $300,000, (Settlement Agreement ¶ 1b), have been made. The third payment is to be the sum equal to $506,000, adjusted either upward or downward depending upon whether GZO operated the Dealership at a profit or at a loss. (Settlement Agreement ¶¶ 1, 5.) The amount of this profit or loss is to be made by a forensic examination. (Settlement Agreement ¶ 5.)

35. The Settlement Agreement did not describe or state the basis by which the required cash payments had been calculated, and the cash payments were not allocated to any specific claim or contention by either party. Plaintiffs have in their opposition to the Motion to Enforce contended that the parties' intended to place GZO in a *status quo ante*, meaning GZO would receive at least repayment of the purchase price paid to date and repayment of a working capital loan. (Pls.' Mem. Opp'n Mot. Enforce 11.) The Settlement Agreement contains no express agreement in this regard.

36. In fact, the Settlement Agreement contains no numbers from which the Preliminary Settlement Amount of $1,006,000 can be objectively reconstructed. Although there are certain numbers that have been documented through the subsequent forensic examination, they do not allow an apparent objective basis to

calculate the sum of $1,006,000. It is established that the agreed APA purchase price was $1,350,000, of which GZO had paid $850,000 by the date of the Settlement Agreement on October 4, 2018. (Strickland Report 2.) The record documents that GZO had advanced $770,000 during its operation, and that if this advance was to be treated as a loan (which Defendants have contested), the principle balance had been reduced to $690,000 at the time of the Settlement Agreement, (Nunnery Aff. ¶ 12).[2] Strickland valued the used cars retained by GZO as $322,221, and Plaintiffs do not challenge this finding. (Strickland Report 16–17.)

37.    As to the dispute as to the Final Payment that drives the Motion to Enforce, Defendants contend that the amount can easily be calculated based on Strickland's final and binding profitability determination, and that LKN tendered a correct Final Payment reflecting a deduction of the loss during GZO's operation. (Defs.' Mem. Supp. Mot. Enforce 12–14.) GZO contends that Strickland's findings, when properly reconstructed consistent with the Settlement Agreement, compel a finding that GZO operated the Dealership at a profit, and GZO is entitled to a Final Payment that adjusts the sum of $506,000 upward by the amount of such profit (after giving credit for the value of used cars GZO retained). (Pls.' Mem. Opp'n Mot. Enforce 12–14.)

---

[2] Defendants have suggested that this advance should be considered an investment by GZO rather than a loan to be repaid. The Court has not been required to resolve this difference of position in reaching its ruling.

38.     Their dispute is governed by their agreement to Section 5 of the Settlement Agreement setting out the method for determining the profit or loss during GZO's operation of the Dealership. (Settlement Agreement ¶ 5.)

39.     GZO surrendered the Dealership on October 10, 2017. Section 5(a) states that GZO is to be held responsible for any liabilities, expenses, and payables to and through September 29, 2017, after which LKN bears responsibility for defined costs for the period between September 30 and October 10, 2017. (Settlement Agreement ¶ 5a.) GZO is entitled to receivables and contracts in transit through October 10, 2017 in excess of the defined expenses charged to LKN for that period. (Settlement Agreement ¶ 5a.)

40.     Section 5(b) directs that the final cash payment of $506,000 defined by Section 1 of the Settlement Agreement is to be adjusted by the amount of profit or loss for the periods defined by Section 5(a). (Settlement Agreement ¶ 5b.)

41.     Section 5(c) establishes the method for choosing the forensic accountant to make the determination called for by Sections 5(a) and 5(b). (Settlement Agreement ¶ 5c.) There is no dispute that Strickland was properly chosen.

42.     Section 5(d) defines the forensic accountant's charge and embodies the agreement that the parties will abide by his determination:

> The forensic accountant, in conjunction with information obtained from the other evaluators, shall render a profit analysis and a determination of how much GZO paid on LKN's behalf related to LKN liabilities/expenses/payables/actions incurred prior to GZO's management of the dealership. That determination shall be binding on the parties. The financial evaluator shall have until November 15 to render their decision. The decision shall be binding.

(Settlement Agreement ¶ 5d.)

43. Section 5(e) allowed each of the parties to make a presentation to Strickland and directed that they reasonably provide Strickland such information as he may request. (Settlement Agreement ¶ 5e.) Ultimately, Strickland met with and received opening and rebuttal written reports from the parties' separate accountants.

44. Strickland issued his determination on August 23, 2018, with a written report of his findings and the basis on which they were made. In sum, Strickland reported:

> I've determined, the Dealership, on an accrual basis, had a net loss of $242,680 between January 1, 2017, and September 30, 2017. Further, I determined the Dealership, on an accrual basis, had operating income (GZO Sales less GZO COGS) of $38,569, between October 1, 2017, and October 10, 2017. In total, I determined that under GZO's management, the Dealership had a loss of $204,111.

(Strickland Report 6.)

45. Strickland determined that the amount of the loss would increase to a total of $250,264.43 if LKN assumed responsibility for an outstanding advertising invoice of $46,153.43. (Defs.' Mot. Dismiss, Mot. Strike Answer and Countercl. 25 ("Defs.' Mot. Dismiss"), ECF No. 71.7.) LKN later paid that invoice. (Defs.' Mem. Supp. Mot. Enforce 12.)

46. Defendants accept the determination of a final loss of $250,264.43 and a Final Payment of $255,735.57, calculated as $506,000 less $250,264.43. (Defs.' Mem. Supp. Mot. Enforce 13–14.) LKN timely tendered that amount to GZO and this

amount remains in escrow taken from the proceeds of LKN's sale of the Dealership to another buyer.

47. Plaintiffs contend that Strickland failed to follow the Settlement Agreement, particularly as he charged the Dealership with a liability that had been discharged by the Settlement Agreement, and when that liability is disregarded, GZO operated the Dealership at a profit. (Pls.' Mem. Opp'n Mot. Enforce 12–14.) GZO then contends that the amount of the working capital loan of $690,000 should be added to Strickland's determination of a loss of $250,244.43, yielding a profit that must be added to the Final Settlement Payment. (Pls.' Br. Supp. Mot. Allow Suppl. Material 9–10, ECF No. 79.) This contention apparently displaces Plaintiffs' earlier argument that Strickland had unfairly charged LKN twice for the expense of the used cars addressed by Section 9 of the Settlement Agreement. (Pls.' Mem. Opp'n Mot. Enforce 12–13.)

48. Much, if not all, of the materials offered in connection with the Motion to Supplement would ultimately not be competent admissible evidence. But, in its discretion, the Court has considered the materials solely for purposes of determining whether Plaintiffs forecast any evidence upon which a legitimate collateral attack on Strickland's finding can be constructed.

49. In particular, Plaintiffs place much emphasis on the transcript of its prior counsel's call with Strickland. Strickland was not under oath and Defendants were not present or represented in the call. While that would defeat allowing the transcript to be admitted, the Court concludes the transcript actually squarely cuts

against Plaintiffs' position. At page 4, Strickland acknowledges his awareness of the working capital loan. (Tr. Audio Recording 4:11–4:14.) But he states that the working capital loan "has no impact and that's why it's been excluded." (Tr. Audio Recording 7:19–7:20.)

50. Strickland explained that the working capital loan would only be relevant to a balance sheet approach, which is not the approach contemplated by Section 5 of the Settlement Agreement. When nevertheless asked to opine about such a balance sheet approach, he explained that under such an approach to address the failure of the APA to close, a structure might be that GZO would receive a refund of the amount of purchase price it had paid to date, together with such remaining portion of the working capital loan as was not offset by GZO's operating loss during its period of management, and that the value of the used cars retained would then be credited to any remaining balance. (Tr. Audio Recording 8:2–9:4.) However, Strickland adhered to his conclusion that the Dealership had suffered a loss under GZO's management. (Tr. Audio Recording 8:5–8:6.)

51. Even if this balance sheet approach might be compared to Plaintiffs' suggestion that the parties intended to provide GZO with a *status quo ante,* Strickland's approach would not yield the value of $1,006,000 expressed as the Preliminary Settlement Payment in Section 1 of the Settlement Agreement.[3]

---

[3] The Court's central inquiry must be whether Plaintiffs have demonstrated either a factual or legal basis to avoid their express agreement that the forensic accountant's determination was to be final and binding. The Court has concluded that they have not. It has not been required to itself reconcile all the various numbers. Solely for purposes of background, the Court notes the following. Under LKN's approach grounded on the express language of the

## IV. STANDARD OF REVIEW

52.     "[A] party 'may enforce a settlement agreement by filing a voluntary dismissal of its original claim and then instituting another action on the contract, or it may simply seek to enforce the settlement agreement by petition or motion in the original action." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 694, 682 S.E.2d 726, 732 (2009) (internal citation omitted). "Where a party chooses to enforce the settlement agreement by motion in the original action, the summary judgment standard of review applies." *DeCristoforo v. Givens*, 2015 NCBC LEXIS 56, at *19 (N.C. Super. Ct. May 29, 2015) (citing *Hardin*, 199 N.C. App. at 695, 682 S.E.2d at 733).

> On summary judgment, the trial court asks "whether, on the basis of materials supplied . . . there [is] a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." The moving party must demonstrate that lack of any triable issue of material fact. The materials supplied to the Court in support of or in opposition to the motion to enforce must be viewed in the light most favorable to the nonmoving party.

*DeCristoforo*, 2015 NCBC LEXIS, at *19 (internal citations omitted).

---

Settlement Agreement, GZO receives a total cash payment of $755,735.57 and retains used cars later valued at $332,221, yielding a total of $1,077,956.57. Under GZO's position, GZO would receive the initial $1,006,000 cash payment expressed in the Settlement Agreement plus an additional cash payment of $117,514.57, calculated as a profit $439,735.57 less the $322,221 value of retained used cars, yielding a total value of $1,445,735.57. Strickland suggested that a balance sheet approach might be calculated as $1,289,735.57, representing a refund of purchase price payments of $850,000, repayment of the working capital loan of $690,000, and giving credit for the $322,221 value in retained used cars. These comparisons, of course, depend on giving Plaintiffs the benefit of evidence they have not demonstrated a basis to admit.

53. "A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contract." *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). "In a contract dispute between two parties, the trial court may interpret a plain and unambiguous contract as a matter of law if there are no genuine issues of material fact." *Premier, Inc. v. Peterson*, 232 N.C. App. 601, 605, 755 S.E.2d 56, 59 (2014); *see also McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 333, 713 S.E.2d 495, 500 (2011) ("Courts may enter summary judgment in contract disputes because they have the power to interpret the terms of contracts."), *disc. review denied*, 365 N.C. 353, 718 S.E.2d 376 (2011); *Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 633, 684 S.E.2d 709, 719 (2009) ("[W]hen the language of a contract is not ambiguous, no factual issue appears and only a question of law which is appropriate for summary judgment is presented to the court.").

54. "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." *Law Offices of Peter H. Priest, PLLC v. Coch*, 2014 NCBC LEXIS 55, at *26 (N.C. Super. Ct. Nov. 5, 2014) (quoting *Stovall v. Stovall*, 205 N.C. App. 405, 410, 698 S.E.2d 680, 684 (2010)), *aff'd* 2015 N.C. App. LEXIS 961 (2015). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court . . . and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339

S.E.2d 49, 52 (1986) (internal citations omitted); *see also Local Social, Inc. v. Stallings*, 2018 NCBC LEXIS 43, at *11 (N.C. Super. Ct. May 9, 2018) (holding that plain and unambiguous contract language controls the interpretation of contracts). "Non-technical terms in a contract are to be given their ordinary meaning, unless the context indicates that the parties clearly intended another meaning." *Local Social, Inc.*, 2018 NCBC LEXIS 43, at *10–11 (citing *Premier,* 232 N.C. App. at 608, 755 S.E.2d at 61).

## V.     ANALYSIS

### A.     The Court has subject matter jurisdiction to consider the Motion to Enforce.

55.     The Court's Consent Settlement Order provided that the Court retained "jurisdiction of this action for consideration and disposition of any motion for violation of any term of this Consent Order." (Consent Order ¶ 2e.) The Consent Settlement Order incorporated and adopted the terms of the Settlement Agreement. (Consent Order ¶ 2a.) By their motion, Defendants contend that Plaintiffs have violated the Consent Settlement Order by refusing to accept Defendants' tender of the Final Settlement Payment.

56.     Without citing authority, Plaintiffs offer the proposition that, for purposes of jurisdiction over a motion filed in the cause, an action to enforce a consent order must be distinguished from an action to redress a violation of the same consent order. (Pls.' Mem. Opp'n Mot. Cause 7, ECF No. 71.) The Court fails to see a meaningful distinction, but rather concludes that the current Motion to Enforce falls within the scope of the Court's retained jurisdiction.

57. As earlier noted, Plaintiffs themselves invoked the Court's jurisdiction after the action had been dismissed. The Court is not impressed with Plaintiffs' reasoning why they, but not Defendants, should have the benefit of the retained jurisdiction.

58. The Court is equally unpersuaded by Plaintiffs' suggestion that Defendants must be estopped from now invoking this Court's continuing jurisdiction because at the earlier hearing they challenged the Court's authority to issue a contempt sanction where it had not made its own fact findings. (Pls.' Mem. Opp'n Mot. Cause 10.) That challenge was not addressed to the Court's power to enforce the Settlement Agreement, but rather was a narrow argument as to whether the use of contempt citation is confined to the violation of the Court's own independent findings as contrasted to approving an order presented as the consent of the parties. (Tr. Hearing 14.) That argument is not pertinent to the Motion to Enforce now before the Court. And further, with the parties having advised that the underlying dispute was to be resolved without court intervention, Judge Conrad was required neither to issue a contempt finding nor address his authority to do so.

59. In short, the Consent Settlement Order retained jurisdiction which this Court may now exercise.

      **B.    The Court, in its discretion, grants Plaintiffs' Motion to Supplement, so that it may consider whether Plaintiffs have raised material issues of fact, without having determined that those materials would ever be admitted into evidence, and after such consideration finds and concludes that Plaintiffs have forecast no basis on which they can avoid their express agreement that the forensic accountant's determination is final and binding.**

60. Plaintiffs have made no argument that they did not clearly agree to submit the issue of profitability to a final and binding determination by a neutral forensic accountant. That agreement contains no ambiguity suggesting a collateral attack on the Settlement Agreement. Plaintiffs' attempted collateral attack is addressed to the method by which the accountant made his determination. But the Court likewise finds no ambiguity in the negotiated provisions of Section 5 of the Settlement Agreement that define the basis for making that determination. Settled contract principles warrant ending the Court's inquiry in the absence of any such ambiguity. But the Court has further analyzed Plaintiffs' argument that they are entitled to collaterally attack their own express agreement.

61. First, Plaintiffs argue that the Motion to Enforce is governed by Rule 56, and accordingly Plaintiffs are entitled to all inferences in their favor. Of course, ultimately, if an inference would in the first instance be competent to attack an express agreement, the inference should arise from competent evidence. It is unlikely that Plaintiffs could admit any of the evidence submitted with their Motion to Supplement. The Court has nonetheless considered those materials, but finds in them no basis to infer that Strickland exceeded his authority or that Plaintiffs should otherwise be allowed to disregard their express agreement accepting his determination as final and binding.

62. Contrary to the suggestion otherwise, Strickland has not suggested that his report is in error or that he failed to follow the procedures defined by Section 5 of the Settlement Agreement when making his determination. He said just the

opposite. He was clearly aware of the working capital loan, but he considered it irrelevant to the determination he was directed to make by Section 5 of the Settlement Agreement.

63. At best, the client affidavits submitted with the Motion to Supplement suggest that GZO's principals when entering the Settlement Agreement were mistaken as to what cash payments GZO would ultimately receive. It is, however, evident that the final cash payment had not at the time of the agreement been finalized. To the extent that GZO's principals were mistaken, there is no forecast that LKN improperly induced that mistake. The law affords Plaintiffs no relief based on a unilateral mistake. *Creech v. Melnik*, 347 N.C. 520, 528, 495 S.E.2d 907, 912 (1998) ("there can be no relief from a unilateral mistake").

64. Plaintiffs' attempt to impose an intent to place GZO in a *status quo ante* fails for at least two reasons. First, language within the four corners of the Settlement Agreement does not compel an implication that a *status quo ante* was the basis of the bargain. Second, Plaintiffs' argument is essentially that any other result is unfair. "A court cannot grant relief from a contract merely because it is a hard one." *Weyerhauser v. Carolina Power and Light*, 257 N.C. 717, 720 127 S.E.2d 539, 541 (1962) (citing *Durant v. Powell*, 215 N.C.628, 633, 2 S.E.2d 884, 887 (1939)). It cannot be concerned with whether entering the Settlement Agreement was "wise or foolish." *Knutton v. Cofield*, 273 N.C. 355, 363, 160 S.E.2d. 29, 36 (1968).

65. The Court need not look beyond these settled principles of contract construction to grant the Motion to Enforce. But it further notes that granting the

motion is consistent with analogous principles which narrowly constrain an attack on the determination of an arbitrator which the parties have agreed will be final. *See G.L. Wilson Building Co. v. Thorneburg Hoisery Co., Inc.*, 85 N.C. App. 684, 686, 355 S.E.2d 815, 817, *disc. review denied*, 320 N.C. 798, 361 S.E.2d 75 (1987) (holding that there is no remedy if an arbitrator makes a mistake because arbitration awards are presumed valid given that the parties chose their own arbitrator and agreed to abide by his decision); *Turner v. Nicholson Properties, Inc.*, 80 N.C. App. 208, 213, 341 S.E.2d 42, 46, *cert. denied*, 317 N.C. 714, 347 S.E.2d 457 (1986) (holding that the purpose of arbitration is to end litigation and, thus, allowing challenges to arbitration awards based on the guise of mistake would defeat this purpose); *Cyclone Roofing Co., Inc. v. David M. Lafave Co., Inc.*, 312 N.C. 224, 236, 321 S.E.2d 872, 880 (1984) (holding that mathematical errors, errors relating to form, and errors showing the arbitrator exceeded his authority constitute the sole grounds for reversing an award); *Boyte v. Dickson*, 62 N.C. App. 682, *disc. rev. denied*, 309 N.C. 461, 307 S.E.2d 362 (1983) (holding that when an award is made within the arbitrator's authority courts will refrain from reviewing that award based on allegations of a mistake).

66. In sum, the Court finds no legal or factual basis to challenge or set aside Strickland's profitability determination.

67. Taking into account LKN's payment of the outstanding advertising invoice, Strickland determined that GZO operated the Dealership at a loss of $250,264.43. Section 1 of the Settlement Agreement clearly directs that GZO is entitled to a Final Cash Payment of $255,735.57, determined by subtracting the loss

of $250,264.43 from $506,000.  LZN has tendered this amount to GZO and GZO is entitled to no more.  As that amount was timely tendered, GZO is not entitled to any interest on that payment, and Plaintiffs suffered no injury as a result of any failure by Defendants to provide Plaintiffs with a deed of trust to secure Defendants' obligations under the Settlement Agreement.

## VI.      CONCLUSION

68.     Accordingly, the Court concludes as follows:

a.     in the Court's discretion, Plaintiffs' Motion to Supplement is GRANTED;

b.     Defendants here satisfied their burden under Rule 56 to show that there is no issue of material fact which must be resolved in order to rule upon the Motion to Enforce;

c.     Defendants' Motion to Enforce is GRANTED;

d.     As provided by the Settlement Agreement, GZO is entitled to receive and accept a Final Payment of $255,735.57, determined by subtracting the loss of $250,264.43 from $506,000;

e.     LKN timely tendered a Final Payment in this amount to GZO, such that GZO is not entitled to recover interest on that payment;

f.     LKN has maintained that amount in escrow after GZO refused to accept LKN's tender, so that GZO has not suffered and is not entitled to recover any additional sum because of any failure LKN

may or may not have made by its failure to provide GZO with security for its obligations under the Settlement Agreement;

g.     Each party shall bear its own costs and fees.


IT IS SO ORDERED this the 6th day of February, 2020.



/s/ James L. Gale
_____

James L. Gale
Senior Business Court Judge